DANA v AMERICAN YOUTH FOUNDATION

Docket No. 237919. Submitted May 22, 2003, at Petoskey. Decided June 24, 2003, at 9:00 A.M.

Candice Dana, who served with the Rural Strategic Action Initiative project, administered by the American Youth Foundation as an AmeriCorps program, applied for unemployment benefits when her service ended. The Employment Security Board of Review denied the claim. The claimant appealed to the Grand Traverse Circuit Court. The court, Philip E. Rodgers, Jr., J., reversed the decision of the board that denied benefits. The Unemployment Agency, Department of Consumer and Industry Services, appealed from that order by leave granted.

The Court of Appeals *held*:

The trial court did not err in determining that AmeriCorps' programs are not work-relief or work-training programs exempt from unemployment coverage under MCL 421.43(o)(v). The Employment and Training Division, United States Department of Labor, has provided a list of the distinguishing characteristics of work-relief and work-training programs, including that the products or services are secondary to providing financial assistance, training, or work experience to individuals to relieve them of their dependence on various measures of relief. The primary purpose of the National and Community Service Act, 42 USC 1250 *et seq.*, under which the AmeriCorps program was created, was to encourage service to community, not to provide job training or help alleviate poverty.

Affirmed.

National Employment Law Project, Inc. (by *Richard W. McHugh*), and International Union, UAW (by *Phillip L. Gilliam*, Associate General Counsel), for Candice Dana.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Errol R. Dargin*, Assis-

tant Attorney General, for the Unemployment Agency, Department of Consumer and Industry Services.

Before: SMOLENSKI, P.J., and GRIFFIN and O'CONNELL, JJ.

SMOLENSKI, P.J. This case arose from the denial of a claim by Candice Dana for unemployment compensation following her service in an AmeriCorps program. Appellant Unemployment Agency, Department of Consumer and Industry Services, appeals by leave granted from the circuit court order that reversed the Employment Security Board of Review's decision denying claimant unemployment-insurance benefits. We affirm.

Claimant served with the Rural Strategic Action Initiative (RSAI) from October 30, 1995, to August 31, 1996. The American Youth Foundation[1] (AYF) administered the RSAI project as an AmeriCorps program. During her service, claimant served as "a model and a leader of the AmeriCorps Program." She recruited volunteers to begin new projects and then trained them to take over those projects. Claimant received a monthly stipend, referred to as a "living allowance," totaling $7,945 over the course of her service. She also qualified for health insurance and a child-care allowance during her service. At the end of her term, claimant received an education award of $4,725 to be used within seven years of the completion of her service.

When claimant's term of service with the RSAI ended, she applied for unemployment benefits, and

---

[1] American Youth Foundation is not a participating party in this appeal. Therefore, references to "appellant" in this opinion refer to Unemployment Agency, Department of Consumer and Industry Services.

the Michigan Employment Security Agency denied her application.[2] Claimant requested a hearing before a referee. Following various motions and procedural delays, the details of which are unimportant to this appeal, the hearing referee affirmed the agency's decision. The referee found that federal authority prohibited finding an employer-employee relationship between the AYF and claimant. Thus, the referee concluded, claimant's services were not performed in employment covered by the Michigan Employment Security Act (MESA), MCL 421.1 *et seq.*

Claimant appealed to the Employment Security Board of Review. The board reversed the referee's decision, concluding that federal law was not controlling. The board applied Michigan's "economic realities" test and determined that claimant had been the AYF's employee. Thus, because claimant's employment was covered under MESA, she was entitled to benefits.

Appellant moved for rehearing, and the board reversed its earlier decision. The board determined that the "economic realities" test indicated claimant had not been the AYF's employee because the AYF had not directed and controlled her activities. The board found that the AYF did not hire, fire, or have the right to discipline claimant; it merely served as a fiscal agent for the project in which claimant participated. Therefore, claimant was not entitled to unemployment benefits.

Claimant appealed the board's second decision, and the circuit court reversed, effectively affirming the

---

[2] According to the Employment Security Board of Review, the agency denied claimant benefits on two grounds: (1) her service with AmeriCorps was not "covered employment," and (2) she did not have sufficient credit weeks. Only the first ground is at issue in this appeal.

board's first decision. The court also applied the "economic realities" test and found that claimant had been in an employer-employee relationship with the AYF during her term of service. The court further concluded that the RSAI project was not a work-relief or work-training program exempt from unemployment coverage under MCL 421.43(o)(v). The Unemployment Agency, Department of Consumer and Industry Services, appealed.

The narrow issue presented on appeal is whether the court erred in determining that AmeriCorps' programs are not work-relief or work-training programs exempt from unemployment coverage under MCL 421.43(o)(v).[3] This Court has limited review of a trial court's review of an agency determination. This Court must determine "whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Boyd v Civil Service Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). This standard of review is indistinguishable from the "clearly erroneous" standard of review. *Id.* at 234-235.

However, questions of statutory interpretation are reviewed de novo by this Court. *Robertson v*

---

[3] Appellant has not challenged the court's finding that an employer-employee relationship existed between plaintiff and the AYF. Thus, appellant's arguments on this matter are irrelevant to our analysis.

However, we address one point on this subject for clarification. Under the National and Community Service Act, 42 USC 12501 *et seq.*, an AmeriCorps participant "shall not be considered to be an employee of the program in which the participant is enrolled." 42 USC 12511(17)(B). At first blush this would seem dispositive, but, as the court in *Twombly v Ass'n of Farmworker Opportunity Programs*, 212 F3d 80, 84 n 4 (CA 1, 2000), noted, "[T]he U.S. Department of Labor considers participants not to be federal employees for purposes of the federal unemployment compensation system, but leaves it to the states to determine eligibility for the state unemployment systems."

*DaimlerChrysler Corp*, 465 Mich 732, 739; 641 NW2d 567 (2002). The primary goal in construing a statute is to ascertain and give effect to the Legislature's intent. *Id.* at 748. This Court looks first to the specific language of the statute, because the Legislature is presumed to have intended the meaning it has plainly expressed. *Id.* If the expressed language is clear, judicial construction is neither required nor permitted, and the statute must be enforced as written. *Id.*

Employees who become involuntarily unemployed may qualify for unemployment compensation under MESA. The act is "remedial and was designed to 'safeguard the general welfare through the dispensation of benefits intended to ameliorate the disastrous effects of involuntary employment.'" *Korzowski v Pollack Industries*, 213 Mich App 223, 228-229; 539 NW2d 741 (1995), quoting *Tomei v Gen Motors Corp*, 194 Mich App 180, 184; 486 NW2d 100 (1992). Therefore, the act should be liberally construed to achieve its intended goal. *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 417; 565 NW2d 844 (1997).

MCL 421.42 defines "employment" for purposes of determining eligibility for unemployment benefits, while MCL 421.43 describes types of service that are excluded from the term "employment." Specifically, MCL 421.43(o)(v) provides:

> For purposes of section 42(8), (9), and (10),[4] "employment" does not apply to service performed in any of the following situations:

---

[4] MCL 421.42(8), (9), and (10) refer to service performed in classified civil service, for certain educational entities, for certain political subdivisions of the state, for a state hospital, or for certain religious, charitable, or other organizations the Federal Unemployment Tax Act, 26 USC 3301 *et seq.*, excludes from "employment" under 26 USC 3306(c)(8).

(v) As part of an unemployment work-relief or work-training program assisted or financed in whole or in part by a federal agency or an agency of a state or political subdivision of a state by an individual receiving the work relief or work training.

Appellant argues that because AmeriCorps was created as a job-training program, claimant's work was performed as part of a government-funded work-training program, which is specifically excluded from eligibility for unemployment insurance benefits under MCL 421.43(o)(v). We disagree.

AmeriCorps was created under the National and Community Service Act (NCSA), 42 USC 12501 *et seq.* The AYF, in turn, administered the AmeriCorps program in which claimant participated. The parties do not dispute that the AYF was financed at least in part by government funds. In enacting the NCSA, Congress made the following findings:

(1) Throughout the United States, there are pressing unmet human, educational, environmental, and public safety needs.

(2) Americans desire to affirm common responsibilities and shared values, and join together in positive experiences, that transcend race, religion, gender, age, disability, region, income, and education.

(3) The rising costs of postsecondary education are putting higher education out of reach for an increasing number of citizens.

(4) Americans of all ages can improve their communities and become better citizens through service to the United States.

(5) Nonprofit organizations, local governments, States, and the Federal Government are already supporting a wide variety of national service programs that deliver needed services in a cost-effective manner.

(6) Residents of low-income communities, especially youth and young adults, can be empowered through their service, and can help provide future community leadership. [42 USC 12501(a).]

In addition, Congress described the purpose of the NCSA as follows:

It is the purpose of this Act to—

(1) meet the unmet human, educational, environmental, and public safety needs of the United States, without displacing existing workers;

(2) renew the ethic of civic responsibility and the spirit of community throughout the United States;

(3) expand educational opportunity by rewarding individuals who participate in national service with an increased ability to pursue higher education or job training;

(4) encourage citizens of the United States, regardless of age, income, or disability, to engage in full-time or part-time national service;

(5) reinvent government to eliminate duplication, support locally established initiatives, require measurable goals for performance, and offer flexibility in meeting those goals;

(6) expand and strengthen existing service programs with demonstrated experience in providing structured service opportunities with visible benefits to the participants and community;

(7) build on the existing organizational service infrastructure of Federal, State, and local programs and agencies to expand full-time and part-time service opportunities for all citizens; and

(8) provide tangible benefits to the communities in which national service is performed. [42 USC 12501(b).]

Appellant believes that these characteristics show a work-relief or work-training program, asserting "there can be no doubt that, since Congress enacted NCSA, in large measure, for its anti-poverty and work-training attributes, it was squarely within the purview of

excluded services as set forth in section 43(o)(v) of the MES Act."

Michigan courts have not addressed whether AmeriCorps is a work-relief or work-training program excluded from "employment" under MESA, nor have they determined what constitutes a work-relief or work-training program. However, the Federal Unemployment Tax Act, 26 USC 3301 *et seq.*, includes a work-relief and work-training exclusion nearly identical to the Michigan provision. Specifically, the federal provision exempts from mandatory state unemployment coverage services performed "as part of an unemployment work-relief or work-training program assisted or financed in whole or in part by any Federal agency or an agency of a State or political subdivision thereof or of an Indian tribe, by an individual receiving such work relief or work training." 26 USC 3309(b)(5).

Because the Michigan provision closely mirrors the federal exclusion, interpretations of the federal statute provide highly persuasive, although not binding, authority. *Sharp v City of Lansing*, 464 Mich 792, 819; 629 NW2d 873 (2001). Although we were unable to find case law interpreting "work relief" or "work training" as used in the federal exclusion, a policy statement issued by the United States Department of Labor (USDOL), Employment and Training Administration, provides guidance.[5] This Court generally defers to the interpretation of a statute by the administrative agency responsible for administering it, unless that interpretation is clearly wrong. *Faircloth v Family*

---

[5] USDOL Unemployment Insurance Program Letter No. 30-96 is available on the internet on the federal Department of Labor's web site: <http://www.doleta.gov/regs/fedregs/notices/96_28656.htm>.

*Independence Agency,* 232 Mich App 391, 406; 591 NW2d 314 (1998).

The USDOL construed "work-relief" and "work-training" programs as distinct exclusions and described the distinction as follows:

> Work-relief projects are primarily intended to alleviate the disadvantaged status of the individual by providing employment. For "work-training," there is no requirement that the individual must be economically disadvantaged. Instead, work-training focuses on improving the individual's employability. (This does not, however, preclude the possibility that some work-training programs be limited to the economically disadvantaged.)

In addition, the USDOL provided a list of the distinguishing characteristics of these programs:

> A. Both of the following characteristics must be present in either work-relief or work-training:
>
> (1) the employer-employee relationship is based more on the participants' and communities' needs than normal economic considerations such as increased demand or the filling of a bona fide job vacancy;
>
> (2) the products or services are secondary to providing financial assistance, training, or work-experience to individuals to relieve them of their unemployment or poverty or to reduce their dependence upon various measures of relief, even though the work may be meaningful or serve a useful public purpose.
>
> B. A work-relief or work-training program must have one or more of the following characteristics:
>
> (1) the wages, hours, and conditions of work are not commensurate with those prevailing in the locality for similar work;
>
> (2) the jobs did not, or rarely did, exist before the program began (other than under similar programs) and there

is little likelihood they will be continued when the program is discontinued;

(3) the services furnished, if any, are in the public interest and are not otherwise provided by the employer or its contractors; and

(4) the jobs do not displace regularly employed workers or impair existing contracts for services.

C. The following characteristic must be present only for work-relief programs:

The qualifications for the jobs take into account as indispensable factors the economic status, i.e., the standing conferred by income and assets, of the applicants.

The USDOL declined to name programs that meet these characteristics, stating, "the characteristics of the program will determine whether or not they must be covered."

In this case, claimant's AmeriCorps service embodied several of these characteristics. First, the evidence indicates that claimant's employment was based more on her needs and the communities' needs than on typical economic considerations. There was no indication that the AYF hired claimant to fill a bona fide job vacancy or meet increased demand. The common thread through all the stated purposes is a desire to encourage service to communities in need, and the NCSA also aims to increase participants' educational opportunities. Additionally, claimant's service was in the public interest, and AmeriCorps' goals include not displacing employed workers, 42 USC 12501(b)(1), both of which are characteristic of a work-training program. Furthermore, the qualifications for participating in the AmeriCorps program as administered by the AYF take into account the applicants' economic status by aiming for seventy-five percent of participants to come from the low-income areas the

programs served, a characteristic of a work-relief program.

However, AmeriCorps does not satisfy a key element in order to be considered a work-relief or work-training program. According to the USDOL's policy statement, a mandatory characteristic of either a work-relief or work-training program is that "the products or services are secondary to providing financial assistance, training, or work-experience to individuals to relieve them of their unemployment or poverty or to reduce their dependence upon various measures of relief . . . ." The NCSA's stated purposes do not support such a characterization of AmeriCorps. The NCSA's primary stated purpose was to encourage service to community, not to provide job training or help alleviate poverty. In fact, there is no indication that these were intended objectives of the NCSA, and appellant provides no support for its contrary assertion.

Therefore, we conclude that the AmeriCorps programs cannot be classified as work-relief or work-training programs, and appellant cannot deny claimant unemployment compensation on this basis. Accordingly, we hold that the circuit court did not err in reversing the board's decision.

Affirmed.