BUREAU OF WORKER'S AND UNEMPLOYMENT
COMPENSATION v DETROIT MEDICAL CENTER

Docket No. 252777. Submitted June 8, 2005, at Detroit. Decided July 26,
2005, at 9:10 a.m.

Marquetta Jones filed a claim for unemployment benefits after
completing a medical residency that was in part under the auspices
of the Detroit Medical Center (DMC). The DMC requested a
determination whether the claimant's services constituted em-
ployment under the Michigan Employment Security Act (MESA),
MCL 421.1 et seq. A determination and redetermination concluded
that they were, but a hearing referee subsequently determined
that the claimant's services were excluded from being employment
under MCL 421.43(o)(v) and (q)(ii). The claimant appealed to the
Employment Security Board of Review, which affirmed the hear-
ing referee. The Bureau of Worker's and Unemployment Compen-
sation, now the Unemployment Insurance Agency, appealed the
board's decision to the Wayne Circuit Court. The court, Isidore B.
Torres, J., affirmed. The bureau appealed by leave granted.

The Court of Appeals held:

1. The claimant was subject to the DMC's direction and control
during her residency and received remuneration for her services in
the form of a stipend and benefits. Therefore, her services consti-
tuted "employment" within the meaning of MESA unless other-
wise excluded. MCL 421.43(o)(v) excludes unemployment work-
relief or work-training programs from the definition of
"employment." While the DMC's medical residency program sat-
isfies some of the characteristics necessary to be a work-training
program, it must satisfy all requirements to be excluded as such a
program. The DMC's medical residency program does not seek to
relieve unemployment, poverty, or dependency on various mea-
sures of relief, and the DMC did not consider the claimant's
economic status during its selection process. Thus, the residency
program cannot be considered an excluded work-training program,
and the hearing referee and the board committed a material error
of law in determining that it was. The circuit court clearly erred in
affirming the board's decision.

2. The circuit court failed to address the second basis for the board's decision, that the claimant's services did not constitute employment because they were excluded as student employment under MCL 421.43(q)(*ii*). The Court of Appeals may review the issue, however, because it is a question of law and the facts necessary for resolution were presented. Because it is undisputed that the DMC is a nonprofit organization, the student employment exclusion does not apply, and the hearing referee and the board committed a material error of law in finding otherwise.

Reversed.

1. UNEMPLOYMENT COMPENSATION — DEFINITION OF EMPLOYMENT — EXCLUSIONS — WORK-TRAINING PROGRAMS.

The work-training program exclusion, which excludes applicable services from the definition of "employment" for purposes of determining unemployment compensation eligibility, requires that the products or services of the program be secondary to providing financial assistance, training, or work experience and have the purpose of relieving the participants of their unemployment or poverty or reducing their dependence on various relief measures in order for services performed under the program to be excluded (MCL 421.43[o][*v*]).

2. UNEMPLOYMENT COMPENSATION — DEFINITION OF EMPLOYMENT — EXCLUSIONS — STUDENT EMPLOYMENT.

The student employment exclusion, which excludes certain services performed by college students from the definition of "employment" for purposes of determining unemployment compensation eligibility, does not apply to services performed for a nonprofit organization (MCL 421.43[q][*ii*]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Jon M. DeHorn*, Assistant Attorney General, for the Bureau of Worker's and Unemployment Compensation.

Health Care Legal Group, PC (by *Michael J. Baughman, Jr.*), for the Detroit Medical Center.

Before: GAGE, P.J., and WHITBECK, C.J., and SAAD, J.

PER CURIAM. The Bureau of Worker's and Unemployment Compensation (the bureau), now the Unemployment Insurance Agency, appeals by leave granted the circuit court opinion and order affirming the decision of the Employment Security Board of Review (the board), which in turn affirmed a hearing referee's denial of unemployment benefits to the claimant, Dr. Marquetta Jones. We reverse.

## I. FACTUAL AND PROCEDURAL HISTORY

After earning her medical degree, claimant participated in a postgraduate medical residency program under the auspices of appellee, the Detroit Medical Center (DMC), and Wayne State University (WSU). Pursuant to the residency agreement, she completed one year in transitional medicine and four years in psychiatry. As a medical resident, claimant was registered as a full-time student at WSU, and her participation in the residency program was governed by a residency agreement that was entered into annually. The program followed a formal curriculum, which included reading assignments and an annual examination. During her residency, claimant obtained and maintained a limited education medical license as required. Claimant was unable to bill patients directly for any services she provided, and she worked under the supervision of an attending physician. Claimant earned a salary of $39,387 a year and received benefits, including paid vacation and insurance for health, dental, life, and long-term disability.

Upon completing her residency in June 2000, claimant filed a claim for unemployment benefits. The DMC opposed the application and requested a determination whether claimant's services constituted employment under the Michigan Employment Security Act (MESA),

MCL 421.1 *et seq.* The bureau's predecessor, the Unemployment Agency of the former Department of Consumer and Industry Services (the agency), issued a determination letter that relied on the United States Department of Labor (USDOL) Employment and Training Administration's UIPL 30-96[1] and concluded that claimant's services constituted covered employment under MESA. The DMC protested this determination, and the agency issued a redetermination affirming the initial determination. The DMC appealed. A hearing referee conducted a hearing and issued an opinion reversing the agency's decision. The referee concluded that claimant's services were excluded from employment under MCL 421.43(o)(*v*) and (q)(*ii*) and that her remuneration was excluded from wages under MCL 421.44. After claimant's request for a rehearing was denied, she filed an appeal with the board. In a split decision, the board affirmed the referee's decision. The bureau appealed the board's decision, and the circuit court affirmed on the basis of MCL 421.43(o)(*v*) without addressing MCL 421.43(q)(*ii*). The bureau appeals the circuit court's opinion and order.

The issue on appeal is whether claimant's service in the DMC's medical residency program constitutes employment under MESA.

### II. STANDARD OF REVIEW

We have limited review of a trial court's review of an agency determination. *Dana v American Youth Foundation*, 257 Mich App 208, 211; 668 NW2d 174 (2003). We must determine " 'whether the lower court applied correct legal principles and whether it misapprehended

---

[1] UIPL 30-96 is an unemployment insurance program letter, which is directed to state employment security agencies and provides them with an interpretation of federal law requirements.

or grossly misapplied the substantial evidence test to the agency's factual findings.'" *Id.*, quoting *Boyd v Civil Service Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). We review for clear error a circuit court's ruling concerning an administrative agency's decision. *Glennon v State Employees' Retirement Bd*, 259 Mich App 476, 478; 674 NW2d 728 (2003). Accordingly, we will overturn the circuit court's decision only if we are left with the definite and firm conviction that a mistake has been made. *Id.*; see also *Boyd, supra* at 234-235. An agency's legal rulings are entitled to "deference, provided they are consistent with the purpose and policies of the statute in question." *Adrian School Dist v Michigan Pub School Employees' Retirement Sys,* 458 Mich 326, 332; 582 NW2d 767 (1998); see also *Dana, supra* at 215. Thus, they will be set aside "if they violate the constitution or a statute or contain a substantial and material error of law." *Adrian School Dist, supra* at 332; see also *Dana, supra* at 215.

However, we review de novo questions of statutory interpretation. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548; 685 NW2d 275 (2004); *Dana, supra* at 211. The primary goal in statutory construction is to ascertain and give effect to the Legislature's intent. *Shinholster, supra* at 548-549; *Dana, supra* at 212. We look first to the specific language of the statute, presuming that the Legislature intended the meaning it has plainly expressed. *Dana, supra* at 212. If the language is clear and unambiguous, judicial construction is neither required nor permitted, and the statute must be enforced as written. *Shinholster, supra* at 549; *Dana, supra* at 212.

### III. MICHIGAN EMPLOYMENT SECURITY ACT

MESA is a remedial act that was designed to " 'safeguard the general welfare through the dispensation of

benefits intended to ameliorate the disastrous effects of involuntary unemployment.' " *Korzowski v Pollack Industries,* 213 Mich App 223, 228-229; 539 NW2d 741 (1995), quoting *Tomei v Gen Motors Corp,* 194 Mich App 180, 184; 486 NW2d 100 (1992); see also MCL 421.2. MESA should be liberally construed to afford coverage and strictly construed to effect disqualification. *Empire Iron Mining Partnership v Orhanen,* 455 Mich 410, 416; 565 NW2d 844 (1997).

For purposes of determining eligibility for unemployment benefits, MCL 421.42 defines the term "employment" in pertinent part as follows:

> (1) "Employment" means service, including service in interstate commerce, performed for remuneration *or* under any contract of hire, written or oral, express or implied.

> \* \* \*

> (5) Services performed by an individual for remuneration shall not be deemed to be employment subject to this act, unless the individual is under the employer's control or direction as to the performance of the services both under a contract for hire and in fact. [Emphasis added.]

MCL 421.44(1) defines "remuneration" as "all compensation paid for personal services, including commissions and bonuses . . . ." Similarly, MCL 421.44(2) defines "wages" as "remuneration paid by employers for employment . . . ."

In the instant case, the parties stipulated that claimant was subject to the DMC's direction and control during her residency. Further, she received remuneration, i.e., a stipend and benefits, for her services. Therefore, the services that she provided to the DMC constitute "employment" within the meaning of MESA unless otherwise excluded, regardless of whether the

residency agreement can be considered a "contract for hire."

MCL 421.43 provides exclusions to the term "employment" in pertinent part as follows:

> Except as otherwise provided in section 42(6), the term "employment" does not include:
>
> * * *
>
> (o) For purposes of section 42(8), (9), and (10), "employment" does not apply to service performed in any of the following situations:
>
> * * *
>
> (v) As part of an unemployment work-relief or work-training program assisted or financed in whole or in part by a federal agency or an agency of a state or political subdivision of a state by an individual receiving the work relief or work training.

In *Dana, supra* at 209, 218, this Court considered MCL 421.43(o)(v) for the first time and concluded that a claimant's service in the AmeriCorps program did not satisfy the unemployment work-relief or work-training program exclusion from employment. Because the Federal Unemployment Tax Act (FUTA), 26 USC 3301 *et seq.*, contains a work-relief and work-training exclusion nearly identical to the exclusion contained in MCL 421.43(o)(v),[2] interpretations of the FUTA provide highly persuasive, although not binding, authority.

---

[2] The FUTA excludes from the definition of employment service performed "as part of an unemployment work-relief or work-training program assisted or financed in whole or in part by any Federal agency or

*Dana, supra* at 215; see also *Sharp v City of Lansing,* 464 Mich 792, 802-803; 629 NW2d 873 (2001). The *Dana* Court found guidance in UIPL 30-96,[3] which provides interpretations of "work-relief" or "work-training" as used in the federal exclusion. *Dana, supra* at 215. This Court generally defers to the interpretation of a statute provided by the administrative agency responsible for administering it, unless that interpretation is clearly wrong. *Id.*

Quoting UIPL 30-96, the *Dana* Court noted that "[t]he USDOL construed 'work-relief' and 'work-training' programs as distinct exclusions . . . ." *Id.* at 216. Specifically, UIPL 30-96 states:

> Work-relief projects are primarily intended to alleviate the disadvantaged status of the individual by providing employment. For "work-training," there is no requirement that the individual must be economically disadvantaged. Instead, work-training focuses on improving the individual's employability. (This does not, however, preclude the possibility that some work-training programs be limited to the economically disadvantaged.) [61 Fed Reg at 57715; see also *Dana, supra* at 216.]

UIPL 30-96 further states:

> A. *Both* of the following characteristics *must be present in either work-relief or work-training*:
>
> (1) the employer-employee relationship is based more on the participants' and communities' needs than normal economic considerations such as increased demand or the filling of a bona fide job vacancy;

---

an agency of a State or political subdivision thereof or of an Indian tribe, by an individual receiving such work relief or work training[.]" 26 USC 3309(b)(5).

[3] The entire text of UIPL 30-96 is contained in the Federal Register. See 61 Fed Reg 57714 (November 7, 1996).

(2) the products or services are secondary to providing financial assistance, training, or work-experience to individuals to relieve them of their unemployment or poverty or to reduce their dependence upon various measures of relief, even though the work may be meaningful or serve a useful public purpose.

B. A work-relief or work-training program must have one or more of the following characteristics:

(1) the wages, hours, and conditions of work are not commensurate with those prevailing in the locality for similar work;

(2) the jobs did not, or rarely did, exist before the program began (other than under similar programs) and there is little likelihood they will be continued when the program is discontinued;

(3) the services furnished, if any, are in the public interest and are not otherwise provided by the employer or its contractors; and

(4) the jobs do not displace regularly employed workers or impair existing contracts for services.

C. The following characteristic must be present only for work-relief programs:

The qualifications for the jobs take into account as indispensable factors the economic status, i.e., the standing conferred by income and assets, of the applicants. [61 Fed Reg at 57715 (emphasis added); see also *Dana, supra* at 216-217.]

Although the claimant's AmeriCorps service embodied several of the enumerated characteristics, including that the participant's economic status be an indispensable job qualification, the Court concluded that the claimant's service did not meet the requirements for an exclusion from the definition of "employment." Specifically, the AmeriCorps program did not "*satisfy a key element in order to be considered a work-relief or work-training program.*" *Dana, supra* at 217-218 (emphasis

added). The *Dana* Court found that it is a mandatory characteristic of either a work-relief or a work-training program that " *'the products or services are secondary to providing financial assistance, training, or work-experience to individuals to relieve them of their unemployment or poverty or to reduce their dependence upon various measures of relief . . . .'* "[4] *Id.* at 218, quoting UIPL 30-96 (emphasis added). Because the stated purpose of the AmeriCorps program was to encourage community service, "not to provide job training or help alleviate poverty," the Court concluded that the program could not be classified as a work-relief or work-training program and that the employer could not deny unemployment benefits to the claimant on that basis. *Dana, supra* at 218. Thus, while the program satisfied portions of UIPL 30-96, it was not excluded from the definition of "employment" under MCL 421.43(o)(*v*) because it did not satisfy *all* the mandatory requirements of UIPL 30-96. *Dana, supra* at 218.

The DMC's vice president of graduate medical education admitted that residents are used for some staffing purposes. However, the basic purposes of the program are to teach residents how to practice their clinical specialty, by providing patient-care experience, and to prepare residents to take the board certification examination. Thus, the DMC's relationship with its residents "is based more on the participants' . . . [educational] needs than normal economic considerations," such as the DMC's staffing needs. Accordingly, the residency program satisfies part A(1) of UIPL 30-96.

---

[4] We note that the *Dana* Court's construction of part A(2) also resolves any inconsistency that may exist between the UIPL's statement that for work-training there is no requirement that an individual be economically disadvantaged and the requirement contained in part A(2) that services performed must be secondary to relieving individuals of their unemployment or poverty.

The ultimate purpose of the residency program is to train residents to become eligible for the board certification examination and recognized as specialists in psychiatry. Completion of a residency program increases a doctor's ability to become employed because virtually all hospitals require board certification.

Concerning part A(2) of UIPL 30-96, we agree that, because the purpose of the DMC's medical residency program is to provide training and experience, as discussed earlier, "the products or services" provided by residents, while useful and meaningful, are secondary to providing training or work-experience. Read as a whole, however, part A(2) of UIPL 30-96 provides that, in order to exclude services provided through a work-training program,

> the products or services [must be] secondary to providing financial assistance, training, or work-experience to individuals *to relieve them of their unemployment or poverty or to reduce their dependence upon various measures of relief,* even though the work may be meaningful or serve a useful public purpose. [61 Fed Reg at 57715 (emphasis added).]

Thus, not only must the program have the goals identified in the first portion of part A(2), but its purpose must be "to relieve [the participants] of their unemployment or poverty or to reduce their dependence upon various measures of relief . . . ." The DMC's medical residency program fails to satisfy that requirement. It is undisputed that the residency program does not seek to relieve unemployment, poverty, or dependence on relief. Claimant did not use any such criteria in selecting this residency program, and the DMC did not consider the economic status of applicants during its selection process.

While the DMC's medical residency program satisfies most of the requirements of UIPL 30-96, it fails to

satisfy the second half of part A(2). Accordingly, it cannot be considered an excluded work-training program, and the DMC could not oppose claimant's claim for unemployment benefits on that basis.[5] The hearing referee and the board committed a material error of law in finding otherwise. The circuit court's decision affirming the board's ruling is therefore clearly erroneous, and we therefore reverse.

We are also mindful of the fact that physicians who complete a postgraduate medical residency program are likely to remain encumbered with unpaid debt incurred during medical school. Providing unemployment compensation at the end of a residency while physicians are seeking employment or attempting self-employment promotes the policy of MESA.

Because we find that application of part A(2) of UIPL 30-96 is dispositive of the issues raised in this appeal, we need not consider parts B and C.

### B. THE STUDENT EMPLOYMENT EXCLUSION

As its second basis for determining that claimant's services did not constitute employment, the board relied on the student employment exclusion contained in MCL 421.43(q)(*ii*). Although this issue was raised and addressed by the hearing referee and the board, the circuit court failed to address it in its opinion and order affirming the board's decision. We may, however, review it because it is a question of law and the facts necessary for resolution have been presented. *Hickory Pointe Homeowners Ass'n v Smyk,* 262 Mich App 512, 516; 686 NW2d 506 (2004).

---

[5] We also note that, although it oversimplifies the issue, it seems apparent that the term "unemployment" in the phrase "unemployment work-relief or work-training program" modifies "work-training" as well as "work-relief." See MCL 421.43(o)(*v*).

MCL 421.43(q)(*ii*) provides in pertinent part that employment does not include the following:

> (q) Service performed for an employing unit other than a governmental entity or *nonprofit organization* and which is any of the following:
>
> * * *
>
> (*ii*) Service performed by a college student of any age, but only when the student's employment is a formal and accredited part of the regular curriculum of the school. [Emphasis added.]

Because it is undisputed that the DMC is a nonprofit organization, MCL 421.43(q)(*ii*) does not apply to exclude from coverage services performed pursuant to the medical residency program at issue. The hearing referee and the board therefore committed a material error of law in finding otherwise.

### IV. CONCLUSION

Reversed. We do not retain jurisdiction.