# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT E. HEINE,

        Petitioner-Appellee/Cross-
        Appellant,

v

MACH 1 GLOBAL SERVICES, INC., also known
as MACH 1 AIR SERVICES, INC.,

        Respondent-Appellant/Cross-
        Appellee.

UNPUBLISHED
April 25, 2017

No. 328964
Wayne Circuit Court
LC No. 15-003562-AA

Before: SAWYER, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

This suit arises from a dispute between petitioner and respondent about the payment of wages under the Payment of Wages and Fringe Benefits Act (PWFBA), MCL 408.471 *et seq.* Respondent appeals the circuit court order that affirmed the decision of an administrative law judge (ALJ), which required the payment of disputed earnings to petitioner. Petitioner cross-appeals the same order, which denied his request for an award of exemplary damages under the PWFBA. We affirm in part, reverse in part.

On appeal, respondent challenges the decision of the ALJ, as affirmed by the circuit court on appeal, which found that petitioner is entitled to the payment of certain earnings, despite petitioner's resignation of employment before the monies were to be distributed. Respondent maintains that the earnings, which are characterized as commissions under the contract, are fringe benefits, not wages, under the PWFBA. As a related matter, respondent argues that both the ALJ and circuit court erred in finding that relevant provisions of petitioner's employment contract were ambiguous.

"This Court has limited review of a circuit court's review of an agency determination. This Court must determine 'whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings.' This standard of review is indistinguishable from the 'clearly erroneous' standard of review." *Dana v American Youth Foundation*, 257 Mich App 208, 211; 668 NW2d 174 (2003) (citations omitted). "[A] finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Boyd v Civil*

-1-

*Serv Comm*, 220 Mich App 226, 235; 559 NW2d 342 (1996). "The circuit court's legal conclusions are reviewed de novo and its findings of fact are reviewed for clear error. Great deference is accorded to the circuit court's review of the [administrative] agency's factual findings; however, substantially less deference, if any, is accorded to the circuit court's determinations on matters of law." *Mericka v Dep't of Community Health*, 283 Mich App 29, 36; 770 NW2d 24 (2009) (quotation marks and citations omitted). "[Q]uestions of statutory interpretation are reviewed de novo by this Court." *Dana*, 257 Mich App at 211. Specifically, "[i]f an administrative agency or circuit court interprets a statute, such a determination is a question of law subject to review de novo." *Mericka*, 283 Mich App at 36.

MCL 408.471 of the PWFBA defines the terms "fringe benefits" and "wages" as follows:

(e) "Fringe benefits" means compensation due an employee pursuant to a written contract or written policy for holiday, time off for sickness or injury, time off for personal reasons or vacation, bonuses, authorized expenses incurred during the course of employment, and contributions made on behalf of an employee.

(f) "Wages" means all earnings of an employee whether determined on the basis of time, task, piece, commission, or other method of calculation for labor or services except those defined as fringe benefits under subdivision (e) above.

"Fringe benefits" are to be paid by an employer "to or on behalf of an employee in accordance with the terms set forth in the written contract or written policy." MCL 408.473. An employer is not permitted to "withhold a payment of compensation due an employee as a fringe benefit to be paid at a termination date unless the withholding is agreed upon by written contract or a signed statement obtained with the full and free consent of the employee without intimidation or fear of discharge for refusing to agree to the withholding of the benefit." MCL 408.474.

In accordance with the relevant provisions of MCL 408.475(1): "An employer shall pay to an employee voluntarily leaving employment all wages earned and due, as soon as the amount can with due diligence be determined." Penalties for violation of specific sections of the Act, including sections MCL 408.472 through MCL 408.478, include "exemplary damages of not more than twice the amount of wages and fringe benefits which were due, if the violation is flagrant or repeated." MCL 408.488(2).

The "Compensation" portion of petitioner's employment contract with respondent provides, in relevant part:

4. Compensation.

a) During Employee's employment hereunder, the Employer shall pay Employee an annual salary of ONE HUNDRED TWENTY THOUSAND DOLLARS ($120,000.00) per year (the "Salary"), which Salary shall be payable to Employee in accordance with the standard salary policies of the Corporation as they may exist from time to time. Salary payments shall be subject to withholding and other application taxes. The salary is subject to adjustment at the discretion of the Corporation.

b) Commissions:

(i) <u>Year 1</u>: A lump sum payment of $10,000.00 on each account that exceeds $300,000.00 of revenue per year (in a twelve month time frame) provided the gross margin of the account is 27.5%. A quarterly payment of 1% of gross revenue for every $100,000.00 increment over $300,000.00 in gross revenues provided the gross margin of the account exceeds 30%.

\* \* \*

<u>Successive Years</u>: A lump sum payment of $5,000.00 on each account that exceeds $300,000.00 of revenue per year (in a 12 month time frame) provided the gross margin of the account exceeds 27.5%. A quarterly payment of 1% of gross revenue for every $100,000.00 increment over $300,000.00 in gross revenues provided the gross margin of the account exceeds 30%.

(ii) All business over $1,000,000.00 per calendar year secured by other national account executives initially recruited by Employee will be commissioned at one-half of one percent to the Employee subject to Notes 1 through 7 below.

(iii) The Employee shall be eligible for any other incentive programs or bonuses generally made available to positions of Vice President-National Accounts.

\* \* \*

Note 7: All commission items contained in **4.b)** are considered incentive plan items. Employee must be an employee on the date of the distribution of an incentive check/commission check to be a plan participant and to be entitled to payment.

\* \* \*

11. <u>Termination by Employee</u>. Employee, upon at least 14 days prior written notice, may terminate his employment under Section 1 of this Agreement for no cause whatsoever. In the event of such termination, Employee shall receive compensation he is entitled to receive pursuant to Sections 4 and 5 of this Agreement, calculated to the date of termination.

Respondent argues that the employment contract clearly identifies the earnings as an "incentive," and therefore, a fringe benefit, not wages. Also, respondent says that the contract is clear that entitlement to payment is contingent upon employment at the time of distribution. Because petitioner resigned from his employment with respondent before the distribution of the commission check, respondent says plaintiff is not entitled to payment.

The ALJ found a contractual ambiguity and held that the earnings were payable as wages rather than as an incentive plan or bonus. The ALJ noted that the employment contract included commissions under the broader heading of compensation, despite labeling them within the same section as an "incentive plan." Supporting her finding of ambiguity, the ALJ referenced a provision in the personnel policy handbook, which, despite referencing commissions as an incentive plan, indicated that incentive plans "are annual plans with quarterly prepayments." Because commissions were paid quarterly, but not until the completion of an accounting, "typically 45 to 90 days after the end of a quarter," the ALJ determined that "finding commissions to be incentives is inconsistent with the handbook." As a result, the administrative law judge found that respondent violated MCL 408.475(1) of the Act because the disputed earnings comprised wages and not a fringe benefit and, therefore, necessitated payment. On appeal, the circuit court afforded deference to the ALJ's decision and, despite some concerns with the analysis undertaken, affirmed the ruling of the ALJ, finding it not to be arbitrary or contrary to the law.

In support of their argument that the disputed earnings comprised a fringe benefit as an incentive plan or bonus and not wages, respondent relies on this Court's decision in *Gravely v Pfizer, Inc*, 170 Mich App 262, 268; 427 NW2d 613 (1988). In similar circumstances, this Court in *Gravely* affirmed an administrative hearing referee's ruling that the disputed earnings were a fringe benefit because they comprised incentive pay, which constituted a "bonus" and not wages. In both *Gravely* and this case, "[t]he disputed earnings were not based on a straight commission. Rather, the bonus incentive plan provided that the percentage rate would be increased as total sales met or exceeded a set quota." *Id.* at 267. As such, the "program constituted a 'bonus' plan." *Id.* The definition of the term "bonus" is found in Mich Admin Code, R 408.9002(2)(d), which states that the word " '[b]onus' means a premium or extra or irregular remuneration in addition to wages that is awarded to an employee under a written contract or written policy." The *Gravely* Court further opined that the parties' respective characterization of the disputed earnings "is not determinative since it is the legal status of those earnings which has been at issue." *Gravely*, 170 Mich App at 268.

Contrary to the circuit court's ruling, the ALJ's determination that the disputed earnings comprised wages and not a fringe benefit is inconsistent with the law. Although the employment contract references the disputed earnings as a "commission" in a section entitled "compensation," this label is not dispositive. *Id.* Both the employment contract in § 4.b(iii) with the affiliated Note 7 and the personnel policy handbook indicate that the disputed earnings comprise part of an incentive plan, not wages. The designation of the disputed earnings as a "bonus," and therefore, a fringe benefit, is consistent with the definition of a bonus in Rule 408.9002(2)(d) and case law. In *Anusbigian v Trugreen/Chemlawn, Inc*, 72 F3d 1253, 1254 (CA 6, 1996), citing *Gravely* as authority, the court stated, "[P]laintiff was not entitled to commissions on sales made until the sales in the specific area had met or exceeded a set quota. Such an arrangement constitutes a 'bonus' plan, not commissions."

This Court is required to "uphold an agency decision if it is supported by such evidence as a reasonable mind would accept as adequate to support the decision." *Century Cellunet of Southern Mich, Inc v City of Ferrysburg*, 993 F Supp 1072, 1078 (WD Mich, 1997). The Court is further required to "give deference to the agency's regulatory expertise and not invade the province of the administrative fact finding agency." *Id.* In this instance, the application of law

by the administrative law judge, as affirmed by the circuit court, is based on the faulty premise that the employment contract is ambiguous.

An ambiguous contract has been defined "as one in which the words may reasonably be understood in different ways." *Allstate Ins Co v Keillor*, 450 Mich 412, 423-424; 537 NW2d 589 (1995). The employment contract in § 4.b(iii) and Note 7 identifies "commissions" as comprising "incentive programs or bonuses" or "incentive plan items," thus distinguishing them from wages. As acknowledged by the ALJ, the personnel handbook also refers to "commissions" as "incentive plans." The only alleged inconsistency identified is within the personnel handbook where it suggests that the commissions are "prepaid." Initially, it is significant to note that the personnel handbook is subject to unilateral revision by respondent, whereas petitioner's employment contract with respondent requires "a writing signed by all the parties" to amend the terms of the contract. The employment contract states, in conjunction with Note 2 of § 4, that "Commissions/incentives may be paid prior to invoice collection by the company; however, commissions/incentives are not considered permanently earned until all freight invoices are paid by clients in full prior to 90 days from the date of the invoice." "If no reasonable person could dispute the meaning of ordinary and plain contract language, the Court must accept and enforce contractual language as written . . . ." *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008). Here, we hold that the contract language belies the existence of any ambiguity. See *Holmes v Holmes*, 281 Mich App 575, 594; 760 NW2d 300 (2008) ("If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous.") (citation omitted).

Similarly, petitioner's contention that § 11 of the employment contract creates an ambiguity or governs the interpretation of the contract is without merit. Specifically, § 11 of the contract pertains to an employee's voluntary termination of employment and necessitates the "receipt [of] compensation [the employee] is entitled to receive pursuant to Sections 4 and 5 of this Agreement, calculated to the date of termination." Petitioner suggests that calculation of the earnings "to the date of termination," implies his entitlement to the earnings for the time period in dispute. Petitioner ignores, however, that the cited provision does not mandate payment in this circumstance because he was not entitled to compensation for the disputed earnings under § 4 of the employment contract. Specifically, the disputed earnings comprise an incentive that petitioner is ineligible to receive because he was not "an employee on the date of the distribution," which renders § 11 inapplicable. This is consistent with MCL 480.474, which precludes an employer from "withhold[ing] a payment of compensation due an employee as a fringe benefit to be paid at a termination date unless the withholding is agreed upon by written contract or a signed statement obtained with the full and free consent of the employee without intimidation or fear of discharge for refusing to agree to the withholding of the benefit."

Accordingly, petitioner is not entitled to the benefits at issue because they are fringe benefits under the PWFBA and the employment contract conditioned their payment based on petitioner being employed at the time the payments were distributed. Further, because we have determined that respondent did not violate the PWFBA, petitioner's issue on cross-appeal—that he is owed exemplary damages because of the PWFBA violation—necessarily fails.

We affirm the denial of exemplary damages and reverse the award of the disputed earnings as wages to petitioner.  Respondent, as the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ David H. Sawyer
/s/ Henry William Saad
/s/ Michael J. Riordan