*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT,

        Petitioner-Appellant,

v

STEVEN WASKO,

        Respondent-Appellee,

and

MICHIGAN DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS, WAGE & HOUR DIVISION,

        Appellee.

UNPUBLISHED
February 18, 2021

No. 350347; 350995
Wayne Circuit Court
LC No. 19-001069-AA

Before: CAVANAGH, P.J., and SERVITTO and CAMERON, JJ.

PER CURIAM.

In Docket No. 350347, petitioner appeals by leave granted[1] the circuit court's order affirming the decisions of the Wage and Hour Division of the Michigan Department of Licensing and Regulatory Affairs (LARA) and Administrative Law Judge (ALJ) Michael St. John that respondent was entitled to a monetary payout for accrued and unused vacation time. In Docket No. 350995, petitioner appeals by leave granted[2] the circuit court's order granting respondent's

---

[1] *Detroit Pub Sch Community Dist v Wasko*, unpublished order of the Court of Appeals, entered December 30, 2019 (Docket Nos. 350347 and 350995).

[2] *Detroit Pub Sch Community Dist v Wasko*, unpublished order of the Court of Appeals, entered December 30, 2019 (Docket Nos. 350347 and 350995).

motion for costs and attorney fees under MCR 7.216(C) and MCL 408.488(3). We reverse and remand in both cases.

## I. FACTS AND PROCEDURAL BACKGROUND

The general facts are undisputed. Respondent was employed with petitioner in several different capacities beginning in 1992, and he worked for petitioner intermittently for over 25 years. Most recently, respondent was employed as an executive director. Petitioner and respondent entered into an employment contract for that position for a term to begin July 1, 2016 and end June 30, 2017. Under the agreement, petitioner agreed to allow respondent to earn 25 vacation days per year as a fringe benefit and roll over no more than 20 vacation days from one year to the next. This case concerns whether petitioner was required to pay several hours of unpaid vacation time earned and accrued by respondent over the course of his employment.

The employment agreement included a section entitled "Effects of Termination." This section provides, in relevant part, the bases for a with-cause termination and the effect termination has on receipt of compensation and benefits. Section 3.1 of the employment agreement provides that an employee "may be terminated with cause at the sole discretion of the District" and that "[e]conomic necessity, elimination of Employee's position, or the District's reorganization/realignment/restructuring" constituted qualifying events that could trigger termination of an employee. Moreover, section 3.2(a) stated: "In the event the District terminates the Employee's employment with cause, Employee shall receive any compensation and benefits earned up to the date of termination, and shall not be entitled to receive any further compensation and benefits hereunder."

In mid-2017, respondent received letters from petitioner indicating his employment agreement would expire on June 30, 2017, and would not be renewed because petitioner was undergoing a reorganization. Respondent thereafter sought a payout for his 812 hours of accrued and unused vacation time. However, petitioner only paid him for 25 of his accrued vacation days, or only 200 of those 812 hours.

Respondent filed a claim for with LARA's Wage and Hour Division alleging he was entitled to the full amount of his unused vacation days. After an investigation, LARA determined petitioner owed respondent wages in the form of a fringe benefit totaling $41,192.31, with interest. Petitioner appealed LARA's decision and, on November 20, 2018, ALJ St. John affirmed LARA's determination and ordered petitioner to pay respondent over $41,000 in earned but unused vacation time. ALJ St. John concluded the employment agreement was ambiguous and, because of that ambiguity, he construed the agreement against petitioner as the drafter, concluding respondent was entitled to payment for all of his unused vacation time accrued over the years. Even so, ALJ St. John noted petitioner's position, "while ultimately incorrect, [was] hardly unreasonable" because it involved difficult questions of statutory and contract interpretation. ALJ St. John concluded exemplary damages were not warranted. Respondent thereafter filed a motion for attorney fees under MCL 408.488(3), which allows LARA to award attorney fees for a violation of the Payment of Wages and Fringe Benefits Act (PWFBA), MCL 408.471 *et seq*. But ALJ St. John denied this request too, explaining petitioner did not act in bad faith and its appeal was objectively reasonable.

Petitioner appealed to the circuit court, arguing the agreement did not provide for a monetary payout of unused vacation days upon termination, that ALJ St. John improperly changed the language of the parties' agreement, and that the ALJ's decision violated the Payment of Wage and Fringe Benefits Act (PWFBA). In response, respondent asserted ALJ St. John properly determined the employment agreement was ambiguous, asserting "substantial evidence" supported the decision, including language found in several other provisions of the employment agreement. The circuit court determined that the ALJ's decision was supported by competent, material and substantial evidence on the whole record and thus affirmed that decision.

Rather than appeal the portion of ALJ St. John's decision regarding attorney fees, respondent filed a motion asking the circuit court to order petitioner to pay respondent's attorney fees under MCL 408.488(3) or MCR 7.216(C). The trial court granted the motion. These appeals followed.

## II. PAYMENT OF ACCRUED AND UNUSED VACATION TIME

On appeal, petitioner argues that respondent's employment agreement did not provide for the payment for more vacation days than it already paid him and that the PWFBA also does not require the payment of additional accrued and unused vacation time. We agree.

> This Court has limited review of a circuit court's review of an agency determination. This Court must determine "whether the lower court applied the correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." This standard of review is indistinguishable from the "clearly erroneous" standard of review. [*Dana v American Youth Foundation*, 257 Mich App 208, 211; 668 NW2d 174 (2003) (citations omitted).]

"[A] finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Boyd v Civil Serv Comm*, 220 Mich App 226, 235; 559 NW2d 342 (1996).

> The circuit court's legal conclusions are reviewed de novo and its findings of fact are reviewed for clear error. Great deference is accorded to the circuit court's review of the [administrative] agency's factual findings; however, substantially less deference, if any, is accorded to the circuit court's determinations on matters of law. [*Mericka v Dep't of Comm Health*, 283 Mich App 29, 36; 770 NW2d 24 (2009) (quotation marks and citations omitted).]

This Court has specifically held that the Michigan Department of Labor's interpretation of the PWFBA should be accorded deference. *Gravely v Pfizer, Inc*, 170 Mich App 262, 267; 427 NW2d 613 (1988). "[Q]uestions of statutory interpretation are reviewed de novo by this Court." *Dana*, 257 Mich App at 211. Specifically, "[i]f an administrative agency or circuit court interprets a statute, such a determination is a question of law subject to review de novo." *Mericka*, 283 Mich App at 36. "The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

"In reviewing questions of statutory interpretation, [this Court's] purpose is to discern and give effect to the Legislature's intent." *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005). "If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *Tevis v Amex Assurance Co*, 283 Mich App 76, 81; 770 NW2d 16 (2009).

MCL 408.471 of the PWFBA defines "fringe benefits" and "wages" as follows:

(e) "Fringe benefits" means compensation due an employee pursuant to a written contract or written policy for holiday, time off for sickness or injury, time off for personal reasons or vacation, bonuses, authorized expenses incurred during the course of employment, and contributions made on behalf of an employee.

(f) "Wages" means all earnings of an employee whether determined on the basis of time, task, piece, commission, or other method of calculation for labor or services except those defined as fringe benefits under subdivision (e) above.

"Fringe benefits" are to be paid by an employer "to or on behalf of an employee in accordance with the terms set forth in the written contract or written policy." MCL 408.473. An employer cannot "withhold a payment of compensation due an employee as a fringe benefit to be paid at a termination date unless the withholding is agreed upon by written contract or a signed statement obtained with the full and free consent of the employee without intimidation or fear of discharge for refusing to agree to withholding of the benefit." MCL 408.474.

When interpreting a contract, this Court's primary goal is to determine the intent of the parties to the contracting. *Trader v Comerica Bank*, 293 Mich App 210, 215; 809 NW2d 429 (2011). A contract must be read as a whole, and each word, phrase, and clause must be given effect. *Id*. at 216 (citations omitted). If the contractual language is unambiguous, this Court must "construe the contract and enforce its terms as written." *Id*. A "contract is ambiguous when its provisions are capable of conflicting interpretations." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003) (citation and quotation marks omitted).

When a contract is ambiguous, extrinsic evidence can be admitted to determine the actual intent of the parties. *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). "An ambiguity may either be patent or latent." *Id*. A patent ambiguity is apparent from the face of the document and, as a result, extrinsic evidence is not admissible to identify a patent ambiguity. *Id*. However, extrinsic evidence may be used to show a latent ambiguity in a contract because a latent ambiguity is an ambiguity that " 'arises from a collateral matter when the document's terms are applied or executed.' " *Id*., quoting *Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 198; 702 NW2d 106 (2005). "Because the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist." *Id*. (citation and quotation marks omitted). Regarding latent ambiguities, our Supreme Court has stated:

A latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings. To verify the

existence of a latent ambiguity, a court must examine the extrinsic evidence presented and determine if in fact that evidence supports an argument that the contract language at issue, under the circumstances of its formation, is susceptible to more than one interpretation. Then, if a latent ambiguity is found to exist, a court must examine the extrinsic evidence again to ascertain the meaning of the contract language at issue. [*Shay*, 487 Mich at 668 (citations, quotation marks, and footnotes omitted).]

We find that Section 3.2(a) of the employment contract at issue was not ambiguous and the ALJ and circuit court erred in concluding otherwise. Section 3.2(a) provided that, in the event an employee's employment was terminated with cause, the employee "shall receive any compensation and benefits earned up to the date of termination, and shall not be entitled to receive any further compensation and benefits hereunder." This section unambiguously means that respondent's salary and benefits would continue while he was employed and until the date of termination of the employment contract (here, June 30, 2017) and would then stop. Section 3.2(a) does not state that, when the employment contract was terminated and respondent ceased working for petitioner that respondent would receive compensation for unused benefits earned throughout his employment history. The contract at issue was, after all, for only a one-year term.

Respondent's employment agreement entitled him to receive 25 days of paid vacation per year while he was employed. This section unambiguously means respondent was provided with 25 days of vacation time that he could take while employed under the employment agreement. Respondent sought a different benefit in the form of a payout of his 812 hours of unused vacation time that he had earned prior to the contract at issue, multiplied by his hourly pay rate. But respondent's employment contract does not provide for such a benefit in the event he was terminated with cause, which he was in light of the school district's reorganization.

Notably, a second ALJ, ALJ Paul Smith, was assigned to determine whether petitioner should have paid respondent for his accrued and unused sick leave after his employment was terminated. ALJ Smith concluded that respondent's claimed right to be paid his accrued and used sick time did not exist within his employment agreement:

This Tribunal may not read additional words into the contractual language in order to find the existence of a fringe benefit that does not exist in the Administrative Employment Agreement. Paragraph 3.2(a) of the agreement states that an employee terminated with cause "shall receive any compensation and benefits earned up to the date of termination, and shall not be entitled to receive any further compensation and benefits hereunder." The unambiguous meaning of this language is that the employee's salary and benefits will continue to the date of termination and then stop. This language does not say that the employee will receive *compensation for unused* benefits earned up to the date of termination. And this Tribunal is not permitted to read those additional words into the document where they are not present.

The benefit at issue in this matter is expressly defined and described in Paragraph 2.3 of the agreement as a right to be absent from work on leave days "without loss of pay." The right to miss work on a certain number of accumulated

-5-

leave days "without loss of pay" is not the same thing as a right to receive a cash payout at termination, at some unspecified rate, for any portion of that benefit that was not used during the time of employment. Nothing in the parties' agreement created a right to be paid money for unused benefits. Accordingly, the specific "benefit" that Respondent is entitled to "receive" up to the date of termination under Paragraph 3.2(a) is the benefit that is described and defined in Paragraph 2.3 of the agreement, which is the right to miss work on leave days "without loss of pay."

In sum, under Act 390, Respondent is only entitled to recover a fringe benefit set forth in the written employment agreement. See MCL 408.473. Here it was the right to miss work on leave days without the loss of pay. The contract gave Respondent the right to "receive" this benefit up to the date of termination, but it did not give him a right to receive payment for unused leave days because nowhere in the contract is the "leave day" benefit described as anything more than the right to miss work on leave days without loss of pay. To convert this benefit to an additional right to be paid for accrued and unused leave days would require writing new words into the agreement that are absent from the controlling document.

Consistent with the analysis above, we agree with ALJ Smith's decision. Respondent's employment agreement allowed him to take vacation time without losing pay while he was employed. The employment agreement did not, however, provide respondent with the right to a monetary payout for his unused vacation time. The decisions of ALJ St. John and the circuit court improperly rewrote the parties' employment agreement to include a benefit not provided in the agreement. See *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 199-200; 747 NW2d 811 (2008) ("[I]t has long been the law in this state that courts are not to rewrite the express terms of contracts."). Therefore, ALJ St. John made a clear legal error in his interpretation of the parties' employment agreement, and the circuit court clearly erred by failing to correct that error.

## III. ATTORNEY FEES AND COSTS

Given our conclusion that ALJ St. John made a clear legal error in his interpretation of the parties' employment agreement, and the circuit court clearly erred by failing to correct that error, we need not extensively address petitioner's arguments regarding attorney fees and costs. Our reversal of the award in favor of respondent clearly means that respondent was not the prevailing party and, therefore, not entitled to award of fees. See *Lavene v Winnebago Indus*, 266 Mich App 470, 475; 702 NW2d 652 (2005) (stating that the prevailing party is generally entitled to recover litigations costs).

## IV. CONCLUSION

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Thomas C. Cameron

-6-