# STATE OF MICHIGAN

# COURT OF APPEALS

TREVOR KELLY,

        Petitioner-Appellee,

v

PAROLE BOARD,

        Respondant-Appellant.

UNPUBLISHED
August 3, 2017

No. 334960
Wayne Circuit Court
LC No. 16-006014-AA

Before: FORT HOOD, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent, the Michigan Parole Board ("the Board"), appeals by leave granted[1] a September 6, 2016 order of the Wayne Circuit Court reversing and remanding the Board's decision to revoke the petitioner's parole. We affirm.

"[T]he Parole Board is an administrative body," *Morales v Mich Parole Bd*, 260 Mich App 29, 34; 676 NW2d 221 (2003), and "[p]arole revocation proceedings are contested cases under the Administrative Procedures Act, [MCL 24.201 *et seq*.]," *In re Parole of Bivings*, 242 Mich App 363, 369; 619 NW2d 163 (2000). "This Court has limited review of a trial court's review of an agency determination." *Dana v American Youth Foundation*, 257 Mich App 208, 211; 668 NW2d 174 (2003). "This Court reviews a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clearly erroneous standard of review." *Vanzandt v State Employees Retirement Sys*, 266 Mich App 579, 585; 701 NW2d 214 (2005). "A finding is clearly erroneous where, after reviewing the record, this Court is left with the definite and firm conviction that a mistake has been made. *Id*. This Court reviews the circuit court's legal conclusions de novo. *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 152; 725 NW2d 56 (2006). "Great deference is accorded to the circuit court's review of the administrative agency's factual findings, however, substantially less deference, if any, is accorded to the circuit court's determinations on matters of law." *Mericka v Dep't of Community Health*, 283 Mich App 29, 36; 770 NW2d 24 (2009).

---

[1] *Kelly v Parole Board*, unpublished order of the Court of Appeals, entered December 21, 2016 (Docket No. 334960).

I.

On appeal, the Board first alleges that the circuit court improperly applied a de novo standard of review when it determined that the Board's revocation was contrary to law. We disagree.

"Whether a circuit court applied the appropriate standard of review is a question of law that this Court reviews de novo." *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 87; 832 NW2d 288 (2013) (*NRDC*).

Although the circuit court did not explicitly state which standard of review it employed, the Board asserts that the circuit court's review was de novo because its decision was limited to conclusions without legal reasoning, failed to address the decision of the administrative law examiner ("ALE"), and invoked the circuit court's own policy decisions regarding the cost of incarceration to substitute for the discretion of the Board. The Board does not challenge any of these actions as individual errors on the part of the circuit court, and we need not address them as such. The Board argues only that these factors support the conclusion that the circuit court exercised its review of the Board's decision without granting the appropriate deference.

The Board asserts that the circuit court's chosen standard of review was de novo, but provides little argument for its assertion that the circuit court's standard of review was *wrong*. Therefore we could consider the issue to have been abandoned on appeal. *DeGeorge v Warheit*, 276 Mich App 587, 594-595; 741 NW2d 384 (2007) ("It is not enough for an appellant to simply announce a position or assert an error in his or her brief and then leave it up to this Court to discover and rationalize the basis for the claims, or unravel and elaborate the appellant's arguments, and then search for authority either to sustain or reject the appellant's position.") In support of its argument, the Board simply quotes Article 6, § 28 of Michigan's 1963 Constitution, which sets forth guidelines for the judicial review of administrative actions. Const 1963, art 6, § 28. Article 6, § 28 of the Michigan Constitution provides, in pertinent part:

> This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. [Const 1963, art 6, § 28.]

Based on this provision, the Board suggests that the proper standard for judicial review of administrative cases is simply whether the decision was supported by competent, material, and substantial evidence on the whole record. However, the Board forgets that a circuit court's review of an agency decision includes evaluating whether the decision was "authorized by law." Indeed, the Administrative Procedures Act ("APA"), MCL 24.201 *et seq.*, sets forth a number of circumstances to support the finding that an agency decision was not authorized by law, specifically directing trial courts:

> (1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

(a) In violation of the constitution or a statute.

(b) In excess of the statutory authority or jurisdiction of the agency.

(c) Made upon unlawful procedure resulting in material prejudice to a party.

(d) Not supported by competent, material and substantial evidence on the whole record.

(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

(f) Affected by other substantial and material error of law.

(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings. [MCL 24.306.]

"[T]he APA's standards of review coincide with the authorized-by-law standard provided in the [C]onstitution[.]" *Northwestern Nat Cas Co v Ins Com'r*, 231 Mich App 483, 489-490; 586 NW2d 563 (1998), citing MCL 24.306. The Michigan Constitution therefore sets forth the minimum requirements, but the more specific guidelines enunciated in MCL 24.306 govern in a contested agency case. *Id* at 490. Notably, the APA's language is mandatory, *requiring* a trial court to hold unlawful and set aside an agency decision contrary to law in any of the listed ways. MCL 24.306(1). Contrary to the Board's assertions on appeal, neither the Constitution nor the APA's guidelines permit an inference of necessary discretion to an agency decision when matters of law are at issue. "The circuit court's review of an administrative agency's decision on a matter of law is limited to determining whether the decision was authorized by law." *City of Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 64; 678 NW2d 444 (2003). However, "[a]n agency's decision that is in violation of statute [or constitution], in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, or is arbitrary and capricious, is a decision that is not authorized by law and must be set aside." *Id*. (quotations and citations omitted.)

The circuit court rested its ultimate decision on perceived legal errors, including "significant due process issues," concluding that the Board's revocation decision was "contrary to law." Thus, the Board is incorrect when it argues that the trial court applied the wrong standard of review.

II.

Next, the Board contends that the circuit court erred when it found that there was insufficient evidence to support the ALE's finding of constructive possession of a firearm. We disagree.

Whether knowing intent to exert control is an element of constructive possession is a legal question requiring the interpretation of administrative rules. This Court reviews de novo the interpretation and application of unambiguous administrative rules. *City of Romulus*, 260 Mich App at 64-65. Regarding unambiguity, "this Court will generally defer to the construction of the statute or administrative rule given by the agency charged with administering it." *Id*. at 65. This Court does not defer to the administrative agency's interpretation of a rule where the

language of the rule is unambiguous, or when it is convinced that the agency's interpretation is clearly wrong. *Id*. at 65-66.

"The circuit court's review of an administrative agency's decision on a matter of law is limited to determining whether the decision was authorized by law." *City of Romulus*, 260 Mich App at 64. MCL 24.306 states that a circuit court "shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is . . . [i]n violation of the constitution or a statute," MCL 24.306(1)(a), or "[a]ffected by other substantial and material error of law," MCL 24.306(1)(f). Generally, a lower court reviews an agency's factual findings to determine if " 'the same are supported by competent, material and substantial evidence on the whole record.' " *Detroit Pub Sch v Conn*, 308 Mich App 234, 245; 863 NW2d 373 (2014), quoting Const 1963, art 6, § 28. Substantial evidence is defined as "that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *Vanzandt*, 266 Mich App at 584. On review, the circuit court may not invade the province of the agency as fact-finder, resolve evidentiary disputes, or pass on witness credibility. *Id*. at 588.

The Legislature has prescribed a higher standard for the sufficiency of evidence to support violations of parole, requiring through MCL 791.240a that a parole violation be supported by a preponderance of the evidence before revocation of parole may be considered. MCL 791.240a(8)-(10). Because this burden of proof is statutorily mandated, any parole violation finding not supported by a preponderance of the evidence violates a statute and is therefore not authorized by law. MCL 24.306(a); see *Nat'l Wildlife Federation v Dep't of Environmental Quality (No. 2)*, 306 Mich App 369, 372-373; 856 NW2d 394 (2014). However, when there is sufficient evidence, "the circuit court may not substitute its judgment for that of the agency, even if the court might have reached a different result." *Vanzandt*, 266 Mich App at 588. Whether the ALE's parole violation finding was properly supported by a preponderance of the evidence first turns on the appropriate definition of "constructive possession."

"Principles of statutory interpretation apply to the construction of administrative rules." *City of Romulus*, 260 Mich App at 64-65. This Court's goal is to ascertain and give effect to the intent of the drafter of the administrative rule under review. *Colucci v McMillin*, 256 Mich App 88, 94; 662 NW2d 87 (2003). This first requires an examination of the plain language of the rule. *Id*. An undefined statutory term is given its plain and ordinary meaning unless it is a term of art with a unique legal meaning. *Mich AFSCME Council 25 v Woodhaven–Brownstown Sch Dist (AFSCME)*, 293 Mich App 143, 156; 809 NW2d 444 (2011); see also *People v Flick*, 487 Mich 1, 11; 790 NW2d 295 (2010), quoting *People v Covelesky*, 217 Mich 90, 100; 185 NW 770 (1921), superseded by statute on other grounds as recognized by *People v Williams*, 491 Mich 164, 171-173; 814 NW2d 270 (2012) ("A well recognized rule for construction of statutes is that when words are adopted having a settled, definite and well known meaning at common law it is to be assumed they are used with the sense and meaning which they had at common law unless a contrary intent is plainly shown."). When the language of an administrative rule is unambiguous on its face, the drafter is presumed to have intended the meaning plainly expressed and further judicial interpretation is not permitted. *Colucci*, 256 Mich App at 94. An administrative rule is ambiguous "if it irreconcilably conflicts with another provision or is equally susceptible to more than a single meaning." *AFSCME*, 293 Mich App at 155.

-4-

We find that the disputed language in Conditions 07 and 08 related to possession —"you must not . . . possess a firearm of any type," and "you must not possess . . . any ammunition"—is unambiguous on its face. The parole conditions do not contain an explicit definition of "possession," and we look to the plain and ordinary meaning of this commonly understood term. Merriam-Webster's Collegiate Dictionary defines "possess" as "to have possession of, take possession of," and "possession" as "the act of having or taking into control; control or occupancy of property without regard to ownership." *Merriam-Webster's Collegiate Dictionary, Eleventh Edition* (2014). "Possession" is also a legal term of art, but its legal meaning reflects its common definition. Relying on Black's Law Dictionary, our Supreme Court recently defined "possession," as " '1.[t]he fact of having or holding property in one's power; the exercise of dominion over property. 2.[t]he right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object.' " *Flick*, 487 Mich at 12, quoting *Black's Law Dictionary* (7th ed). Similarly, this Court recently defined "possession" as a term signifying dominion or right of control over an object with knowledge of its presence and character. *People v Norfleet*, ___ Mich App ___, ___; ___ NW2d ___ (2016), slip op at 4, citing *People v Nunez*, 242 Mich App 610, 615; 619 NW2d 550 (2000). The Board has not put forth any other "common and accepted meaning" of the word "possess," and we are not aware of one. Indeed, both parties cite criminal law decisions to support their definition of "constructive possession," acknowledging that it is the legal meaning of "possession" that controls in this case.

On appeal, the Board argues that to prove "possession," evidence of mere knowledge and proximity is sufficient. But this interpretation is contrary to both the common definition and accepted legal meaning of "possession," and simply cannot be accepted. It is true that under Michigan law, possession can be either actual or constructive. *People v March*, 499 Mich 389, 415; 886 NW2d 396 (2016). Michigan Courts have consistently upheld that the basic requirements for constructive possession are knowledge, power or accessibility, and intent to exercise dominion or control. See, e.g., *People v Minch*, 493 Mich 87, 91-92; 825 NW2d 560 (2012) (stating that a person has constructive possession when he "knowingly has the power and the intention at a given time to exercise dominion or control over a thing," and when "the totality of the circumstances indicates a sufficient nexus between [the] defendant and the contraband"); *Flick*, 487 Mich at 14 (noting that although "[d]ominion and control over the object need not be exclusive," the essential question "is whether the defendant had dominion or control"); *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011) (stating that constructive possession requires "proximity to the article together with indicia of control"). Most recently, in *March*, 499 Mich at 415, our Supreme Court explained that "[a] person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons[.]" (Quotations and citations omitted.)

To support its disposal of the "control" element, the Board cites only the "sufficient nexus" test for constructive possession, often employed by our courts in cases involving possession of narcotics. Stated simply, the test permits a finding of constructive possession when "the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *People v Wolfe*, 440 Mich 508, 521; 489 NW2d 748, amended 441 Mich 1201 (1992). This definition of constructive possession contains no explicit element of power or control. However, the phrase "sufficient nexus" contains an implicit element of control the

Board, quite simply, ignores. In adopting the sufficient nexus language from the Ninth Circuit, the Michigan Supreme Court provided the following explanation:

"We have stated that constructive possession may be demonstrated by direct or circumstantial evidence that the defendant had the power to dispose of the drug, or 'the ability to produce the drug . . . ,' or that the defendant had the 'exclusive control or dominion over property on which narcotics are found . . . ' Constructive possession may also be proven by the defendant's participation in a 'joint venture' to possess a controlled substance. The ultimate question is whether, viewing the evidence in a light most favorable to the government, the evidence establishes a sufficient connection between the defendant and the contraband *to support the inference that the defendant exercised a dominion and control over the substance.*" [*Wolfe*, 440 Mich at 521-522, quoting *United States v Disla*, 805 F2d 1340, 1350 (CA 9, 1986) (emphasis added).]

In other words, the "sufficient nexus" is a connection between an alleged possessor and the item he is alleged to possess sufficient to support the inference that the alleged possessor "exercised dominion and control" over the item. The sufficient nexus test, therefore, also contains an element of control. Regardless of whether possession is actual or constructive, neither the ordinary meaning of "possession" nor its legal counterpart encompasses knowing proximity alone. A person's mere presence near contraband does not prove knowing possession or an ability to control it. See *Wolfe*, 440 Mich at 520 (reiterating the "well established" principle "that a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession.") We conclude that the Board's argument for constructive possession is based on an inaccurate interpretation of that term, and the appropriate definition of "constructive possession" for purposes of petitioner's parole conditions is the one articulated most recently by our Supreme Court in *March*, 99 Mich at 415, which explicitly incorporates the original element of intent to exercise dominion or control and provides that a person "has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing[.]"

The circuit court did not err when it concluded that the ALE's finding of constructive possession was contrary to law. The ALE clearly relied on an improper formulation of constructive possession when it explicitly stated that it found the ownership of the firearms and ammunition and the fact that the guns were inaccessible to petitioner "immaterial." The ALE justified this finding with an explanation that the parole condition did not distinguish between "loose" firearms and those secured by a locking mechanism and that, in any case, petitioner had access to the room in which the firearms were discovered. Regardless of whether the firearms were loose or locked, the parole conditions specifically employed the word "possess." It simply cannot be said, based on this record, that the ALE's conclusions support a finding of *possession* of the firearms. Indeed, the ALE did not make *any* factual findings at all on the issue of petitioner's knowing power or intention to exercise dominion or control at any given time over the firearms or ammunition.

The ALE's incorrect interpretation of constructive possession and failure to consider the requirements of constructive possession, on its own, is a mistake of law supporting the circuit court's reversal. MCL 24.306(1)(f). We also note that, on this record, the facts and

circumstances presented at the revocation hearing do not support the inference that petitioner, by a preponderance of the evidence, "knowingly [had] the power and the intention at a given time to exercise dominion or control" over the firearms, the ammunition, or their cases. Knowing power and intention to exercise dominion and control over an item requires more than simply noticing an item, recognizing that it is prohibited, and leaving it alone. *Flick*, 487 Mich at 18-19. Evidence of knowing power and intention to exercise control might consist of, among other similar indicators, exclusive control over the premises where the prohibited item was found, an attempt to conceal or destroy the prohibited item, knowing transport of the item, or extended exposure to the item after determining that possession of the item is prohibited, *Wolfe*, 440 Mich at 521-523. Such evidence does not exist here.

Although one of the firearms was discovered in an unlocked case, it was unloaded, locked with a slide mechanism requiring a key, and according to the agent who discovered the weapons, was "inoperable." The other firearm was never seen by the parole agents during the spot check. The agents found a locked hard case next to the unlocked gun case, but could not open it without a key. They determined that the case contained a firearm through petitioner's suggestion, as petitioner told them he had once seen a video of his brother, Walter Kelly, with an AR-15 on Facebook and thought that the hard case might contain that weapon. There was no evidence showing that petitioner had any reasonable means of accessing the weapons. Indeed, the agents admitted that they did not search the house for keys after finding that petitioner did not have any of the keys on his personal key ring. Walter testified at the parole revocation hearing that he had the only keys with him in New York. Petitioner immediately informed the agents that the items belonged to his brother. Indeed, there was no evidence to prove that petitioner had even seen one of the weapons, the AR-15, outside of a Facebook video. The ALE specifically found that there was no evidence to show that petitioner ever attempted, or even intended, to utilize any of the weapons or ammunition. Further, petitioner testified that he noticed the locked cases under Walter's bed while he was looking for clothes, and simply left the cases there. Petitioner's statements in this regard were not disputed.

Undisputedly, the ALE did find evidence to show that petitioner had access to the bedroom in which the weapons and ammunition were found. Petitioner led the agents to the bedroom when they asked him to see "his room," he had several items stored in the room, and while he later told the agents that the bedroom belonged to Walter, he admitted that he had access to the bedroom and slept there sometimes. The ALE incorrectly assumed that because petitioner had access to and ability to control the bedroom and its contents, he constructively possessed all of the contents of the bedroom. Again, to constructively possess an item, one must knowingly have the power and the intention at a given time to exercise dominion or control over a thing. The Board repeatedly insists that because the weapons and ammunition were found in "petitioner's bedroom" he must have possessed them. But the ALE declined to specifically find that the bedroom containing the weapons, which petitioner's mother insisted was Walter's, belonged to petitioner, and, in any case, while the location of items in one's personal living space is strong evidence of knowing intent to control those items, it is not dispositive. The ALE failed to make any findings of fact to support, by a preponderance of the evidence, the inference that petitioner intended to exercise dominion or control over the bedroom or any of its contents, including the weapons and ammunition. Petitioner's violation of parole was not proven by a preponderance of the evidence, or even by competent, material, and substantial evidence. We remand to the Board for a new hearing on the matter.

## III.

Next, the Board argues that the circuit court erred when it concluded that the Board's parole revocation was in violation of petitioner's due process right to fair notice of prohibited conduct. We disagree.

Whether petitioner was given adequate notice of prohibited conduct to satisfy his right to due process is an issue of constitutional law that this Court also reviews de novo. *In re Parole of Hill*, 298 Mich App 404, 410; 827 NW2d 407 (2012).

On appeal to the circuit court, petitioner argued that the language of Conditions 07 and 08 regarding prohibitions on possession failed to provide adequate notice that presence in a home where lawfully owned firearms were kept constituted a parole violation. Counsel for the Board emphasized language in the conditions prohibiting petitioner's being in the company of anyone known to possess prohibited items and argued that it could not have been clearer that to possess or even be in the company of someone with firearms, lawfully owned or not, was against the terms of petitioner's parole, an argument the Board repeats on appeal. In response, petitioner argued that parolees have a due process right to notice of prohibited conduct and that if the prohibition on "possession" required only proximity to support a violation, petitioner had a right to be informed of such. The circuit court agreed, concluding that the Board's parole revocation decision was contrary to law because petitioner "was never properly made aware that mere presence in a home or [sic, of] a firearm lawfully owned by another subjected him to five years in prison."

There is no question that petitioner had a due process right to notice of prohibited conduct. A prisoner has no due process interest in the potential for parole. *Jones v Dep't of Corrections*, 468 Mich 646, 651; 664 NW2d 717 (2003) ("A prisoner enjoys no constitutional or inherent right to be conditionally released from a validly imposed sentence."); see also *Morales*, 260 Mich App at 48, and *Greenholtz v Inmates of Nebraska Penal & Correctional Complex*, 442 US 1, 7; 99 S Ct 2100; 60 L Ed 2d 668 (1979). However, although "matters of parole lie solely within the broad discretion of the [Board]," *Jones*, 468 Mich at 652; see also *Hopkins v Parole Bd*, 237 Mich App 629, 637; 604 NW2d 686 (1999); MCL 791.234(11), that discretion is clearly restricted by legislative limitations, *People v Idziak*, 484 Mich 549, 584; 773 NW2d 616 (2009) ("An agency such as the [Michigan Department of Corrections] has no inherent authority, and the limitations of its power and authority must be measured by the statutory enactments from which it is created," internal quotation marks omitted). For example, by statute, the Board "has the discretionary authority to grant or deny parole, MCL 791.233, . . . [and] if a parolee violates the terms of his parole, the Parole Board has the authority to revoke parole[,] MCL 791.240a." *Id*. at 584-585. However, once parole is granted and the prisoner is released from prison on parolee status, that parolee gains a protected interest in continued liberty. *In re Parole of Haeger*, 294 Mich App 549, 574; 813 NW2d 313 (2011). "[L]imited due process requirements, including notice and the opportunity to be heard, apply to the loss of liberty occasioned by parole revocation." *Jones*, 468 Mich at 652.

Once a prisoner is released on parole, the Board retains discretion to revoke parole only for cause and in accordance with statutorily proscribed procedural guidelines. MCL 791.240a; *Jones*, 468 Mich at 652-653. In part, these proscribed procedural guidelines require proof that petitioner violated a condition of his parole by a preponderance of evidence. MCL 791.241a.

-8-

They also require that petitioner be given adequate notice of conduct that may be considered a violation of parole. Under Mich Admin Code, R 791.7730, a rule promulgated by the Board pursuant to its authority to set procedural guidelines for parole revocation under MCL 791.206:

> Each order of parole shall set the parole term and shall contain conditions of parole that are reasonably necessary to assist a parolee to lead a law-abiding life. There shall be a reasonable relationship between parole conditions and both the prisoner's previous conduct and present capabilities. All conditions shall be sufficiently specific to guide both supervision and conduct. [Mich Admin Code, R 791.7730(1).]

The language of the administrative rule closely tracks language used by our courts and the United States Supreme Court when considering challenges to the adequacy of enactments to provide notice of prohibited behavior. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v City of Rockford*, 408 US 104, 108-109; 92 S Ct 2294; 33 L Ed 2d 222 (1972). " 'In order to pass constitutional muster, a penal statute must define the criminal offense 'with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *People v Boomer*, 250 Mich App 534, 538-539; 655 NW2d 255 (2002), quoting *People v Lino*, 447 Mich 567, 575; 527 NW2d 434 (1994).

Petitioner's argument that the disputed parole condition failed to provide adequate notice under the Due Process Clause is an assertion that the parole condition is unconstitutionally vague. A constitutional challenge to an enactment based on its failure to provide adequate notice of prohibited conduct is brought under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Lino*, 447 Mich at 575 n 2. "[T]here are three ways in which an enactment may be found unconstitutionally vague: (1) failure to provide fair notice of what conduct is prohibited, (2) encouragement of arbitrary and discriminatory enforcement, or (3) being overbroad and impinging on First Amendment freedoms." *People of City of Grand Rapids v Gasper*, 314 Mich App 528, 537; 888 NW2d 116 (2016). "Vagueness challenges that do not implicate First Amendment freedoms are examined in light of the facts of each particular case." *Lino*, 447 Mich at 575.

The parole conditions at issue here are not unconstitutionally vague on their face. As the Board argues, they very clearly prohibit ownership or possession of both firearms and related implements, and presence in the company of anyone in possession of such items. The words, as used, are not ambiguous. Possession is a legal term with a commonly understood meaning. As the Board correctly argues, "it could not have been made any clearer to [petitioner] that to possess or even be in the company of someone with firearms, lawfully owned or not, was against the terms of his parole." Employing the commonly understood definition of constructive possession, as outlined above, resolves any potential notice issues.

In this case, the issue is whether the parole conditions are vague as applied to petitioner. The answer turns on the practical definition of constructive possession. The Board argues that constructive possession includes simple knowledge of and proximity to weapons. The Board then suggests that petitioner should have deduced, from the language of the conditions, that he was prohibited from simply being around prohibited items.

We find that if the parole conditions at issue were intended to dispense with the commonly understood legal definition of constructive possession and cover the conduct argued by the Board to constitute a parole violation, they are unconstitutionally vague. Again, constructive possession requires intent to exercise dominion or control over an item, and mere knowledge and proximity are not enough to show legal "possession." If the petitioner's conduct here—being present in a home where firearms lawfully owned by another resident are stored—is prohibited by the parole conditions, it simply cannot be said that the parole conditions were written "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." There is no language in either Condition 07 or Condition 08 "sufficiently specific to guide" a parolee's conduct if the parolee is required to avoid any situation that would place him within knowing proximity to firearms or ammunition, or to guide agents in appropriate supervision. Counsel for the Board conceded in the lower court that the Board would simply have to exercise its discretion in each case to prevent the absurd situations which might result if the conditions were construed to prohibit mere knowing proximity to a firearm. The Board essentially admitted that the conditions, if construed without regard to plain or legal meaning of the word "possession," were ripe for arbitrary enforcement. The ALE's conclusion that petitioner violated his parole was therefore based on an interpretation of Conditions 07 and 08 that rendered them unconstitutionally vague and in violation of the Board's own administrative rules.

As previously discussed, "[t]he circuit court's review of an administrative agency's decision on a matter of law is limited to determining whether the decision was authorized by law." *City of Romulus*, 260 Mich App at 64. Relevant here, MCL 24.306(1)(a) provides that a circuit court "shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is . . . [i]n violation of the constitution or a statute." The circuit court therefore accurately applied the law when it reversed the Board's revocation decision and remanded for further proceedings after finding that the language of Conditions 07 and 08 was unconstitutionally vague as applied to petitioner.

IV.

Next, the Board argues that the circuit court erred when it found that the ALE's failure to consider the "momentary innocent possession defense" was an error of law requiring reversal. On this, we agree.

"The circuit court's review of an administrative agency's decision on a matter of law is limited to determining whether the decision was authorized by law." *City of Romulus*, 260 Mich App at 64. Under MCL 24.306(1)(f), a circuit court "shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is . . . [a]ffected by other substantial and material error of law."

Finding that the ALE made an error of law when it failed to consider the defense of momentary innocent possession, the circuit court concluded that the ALE's decision regarding petitioner's alleged parole violation was unauthorized. Although the circuit court applied the appropriate standard of review, the circuit court's ultimate finding was based on its own erroneous conclusion that petitioner was entitled to a "momentary or innocent possession" defense. This Court adopted a limited a "momentary or brief possession of a weapon" defense to the general intent crime of carrying a concealed weapon (CCW), MCL 750.227, when the

momentary possession resulted from "disarming of a wrongful possessor" and "the possessor had the intention of delivering the weapon to the police at the earliest possible time," in the 1986 case of *People v Coffey*, 153 Mich App 311, 315; 395 NW2d 250 (1986), overruled by *People v Hernandez-Garcia*, 477 Mich 1039, 1040; 728 NW2d 406 (2007). *Coffey* was explicitly overruled in *Hernandez-Garcia*, 477 Mich at 1040, in which our Supreme Court held that "momentary innocent possession of a concealed weapon is not a defense to a charge of [CCW.]" More recently, in holding that the momentary innocent possession defense was also an invalid affirmative defense to a charge of felon in possession of a firearm, MCL 750.224f, our Supreme Court cited *Hernandez-Garcia* and noted that the momentary innocent possession defense was "now defunct." *People v Dupree*, 486 Mich 693, 711; 788 NW2d 399 (2010).

Because Michigan law does not recognize the momentary innocent possession defense as a valid affirmative defense, the circuit court erred when it concluded that the ALE's failure to consider the defense was a violation of the law. The circuit court therefore failed to apply the correct legal principles in this regard. Because the circuit court's reversal of the parole revocation decision as unauthorized was proper for reasons already discussed, *supra*, the trial court's error in this regard is harmless and reversal is not required. See MCR 2.613(A); see also *NRDC*, 300 Mich App at 89 (explaining that this Court will not overturn a circuit court's order on appeal from an administrative agency decision on the basis of a harmless error.

V.

Next, appellant argues that the circuit court erred when it determined that the ALE's refusal to allow petitioner's presentation of witness testimony at the preliminary hearing violated petitioner's right to due process and required reversal. We agree.

Petitioner was immediately incarcerated after his arrest for alleged probation violations. A preliminary examination was held 11 days after his arrest. In his summary of the proceedings, the presiding ALE noted that petitioner's mother and one of petitioner's brothers, Roy Mackenzie, appeared to testify on petitioner's behalf but "their testimony was not allowed." At the circuit court hearing on appeal from petitioner's ultimate parole revocation, the circuit court concluded that the examiner's decision to prohibit testimony from petitioner's witnesses was contrary to law. The circuit court found that the witnesses' intended testimony was relevant, and that the examiner's refusal to hear it deprived petitioner of his due process right to present relevant evidence.

MCL 791.239a sets forth the procedural requirements for the Board to follow in cases of suspected parole violations. In pertinent part, MCL 791.239a provides:

> (1) Within 10 days after an arrest for an alleged violation of parole, the parolee shall be entitled to a preliminary hearing to determine whether there is probable cause to believe that the conditions of parole have been violated or a fact-finding hearing held pursuant to [MCL 791.240a].

> (2) Prior to the preliminary hearing, the accused parolee shall be given written notice of the charges, time, place, and purpose of the preliminary hearing.

(3) At the preliminary hearing, the accused parolee is entitled to the following rights:

(a) Disclosure of the evidence against him or her.

(b) The right to testify and present relevant witnesses and documentary evidence.

(c) The right to confront and cross-examine adverse witnesses unless the person conducting the preliminary hearing finds on the record that a witness may be subjected to risk of harm if his or her identity is revealed. [MCL 791.239a, citation footnote omitted.]

Under the plain language of the statute, petitioner had a right to present relevant witnesses at the preliminary hearing, and the examiner deprived petitioner of this right.

The circuit court applied the wrong legal principles to the extent it considered the examiner's error an independent basis for reversal of the parole revocation decision. Reversal of an agency decision or order under the APA requires that the "substantial rights of the petitioner have been prejudiced" because of the agency's unlawful action. MCL 24.306(1). Petitioner has not addressed this issue on appeal, and has not presented any evidence to support a finding that his substantial rights were affected by the examiner's erroneous prohibition of witness testimony at the preliminary hearing. Nor is this Court able to find any evidence in the lower court record to support such a conclusion. Both of the witnesses that were denied the opportunity to testify at the preliminary hearing were permitted to testify at the full parole violation hearing. The circuit court therefore lacked the authority to reverse the Board's parole revocation decision on this ground.

As previously discussed, the circuit court's reversal of the parole revocation decision as unauthorized by law was otherwise proper. Thus, the circuit court's error in this regard is harmless and reversal is not required. See MCR 2.613(A); see also *NRDC*, 300 Mich App at 89.

VI.

Finally, the Board argues that the circuit court erred when it reversed the Board's decision after determining that the Board's imposition of a mandatory 60-month continuance in cases of firearm possession without consideration of mitigating circumstances constituted an abuse of discretion. We disagree.

Under MCL 24.306(1)(a), a circuit court "shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is . . . [i]n violation of the constitution or a statute," and under MCL 24.306(e), when the decision is "[a]rbitrary, capricious or clearly an abuse or unwarranted exercise of discretion." At the circuit court hearing, petitioner argued that the Board's application of an automatic 60-month continuance, without considering mitigating circumstances, was a violation of petitioner's right to due process. Neither this Court nor the Michigan Supreme Court has considered a challenge such as the one presented here. On appeal, the Board argues that the circuit court's conclusion was erroneous because (1) the Board no longer applies a zero tolerance

-12-

policy in firearm possession cases, and (2) there is no evidence to show that the Board failed to consider mitigating circumstances in petitioner's case.

"There is scant published caselaw analyzing the multipart mechanics of Michigan's current parole process." *In re Elias*, 294 Mich App 507, 510; 811 NW2d 541 (2011). "Consequently, circuit courts lack useful precedent when called upon to review the propriety of a parole decision." *Id*. at 510-511. A brief summary of the procedure is useful. "The Legislature created the Parole Board as part of the Michigan Department of Corrections (DOC)." *Id*. at 411, citing MCL 791.231a. Pursuant to a Legislative mandate, the DOC promulgated regulations outlining factors for the Board to consider before granting parole. *Id*. at 512-515; see Mich Admin Code, R 791.7715-7716. The Legislature, through MCL 791.233e(2) and (3) enumerated a list of both mandatory and permissive factors for the Board to consider when developing parole guidelines, *id*. at 512-515; see Mich Admin Code, R 791.7715-7716, and provided through MCL 791.238 that "[e]ach prisoner on parole shall remain in the legal custody and under the control of the department." When a parolee is suspected to be in violation of his parole, he

> is entitled to a preliminary probable cause hearing within ten days after arrest for parole violation, MCL 791.239a(1), and is entitled to a fact-finding hearing before a member of the Parole Board or a hearing officer within forty-five days of return to prison. MCL 791.240a(1). The parolee is entitled to be represented by counsel at the parole revocation hearing. MCL 791.240a(2). Additionally, the parolee is entitled to hear the evidence against the parolee, to testify and present evidence, and to cross-examine witnesses. *Id*. A parole violation must be established by a preponderance of the evidence. MCL 791.240a(5).

> After the hearing, the hearing officer prepares a report and recommendation for disposition by the Parole Board. MCL 791.240a(5). The board then enters an order either rescinding parole or reinstating it. MCL 791.41. A rescinding order also sets the length of time before the offender will again be eligible for parole. That period can range from one day to the maximum sentence imposed for the original offense, in the discretion of the board. MCL 791.238(2). [*In re Wayne Co Prosecutor*, 232 Mich App 482, 485-486; 591 NW2d 359 (1998) (citations altered).]

The statutory structure makes clear that a parolee's freedom is a limited freedom,[2] and with only limited exceptions, matters of parole lie within the broad discretion of the Board. *Jones*, 468 Mich at 652. The Board's discretion is not, however, unlimited. "[T]he Legislature has clearly imposed certain statutory restrictions on the Board's exercise of its discretion." *In re Elias*, 294 Mich App at 521-522. By statute, once a prisoner is released on parole, the Board retains

---

[2] See *Morrissey v Brewer*, 408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972), 408 US at 480:

> [T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions. [Citation omitted.]

-13-

discretion to revoke parole only *"for cause and in accordance with statutorily proscribed procedural guidelines."* *Parole of Hill*, 298 Mich App at 411, citing *Jones*, 468 Mich at 652-653 (emphasis added). These procedural guidelines guarantee defendant a right, at his revocation hearing, "[t]o present other relevant evidence in mitigation of the charges." Our Supreme Court has acknowledged that the requirements, outlined in MCL 791.240a, "serve to protect the due process interests . . . of a parolee whose liberty is at stake by virtue of a charge of parole violation," outlined by the United States Supreme Court in *Id*. *Jones*, 468 Mich at 652.

In *Morrissey*, 408 US at 479-480, 484-487, the Supreme Court delineated a two-step process for parole revocations, requiring first a preliminary hearing near the time of arrest to determine whether probable cause supports the inference that the parolee violated the conditions of his parole. Once probable cause has been found, the Court held that due process required a comprehensive revocation hearing, at which the Board would resolve disputed facts and decide "whether the facts as determined warrant revocation." *Morrissey*, 408 US at 488. Importantly, the *Morrissey* Court explained that at this second hearing, "[t]he parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Id*.

Although not binding on this Court, the Sixth Circuit's opinion in *Preston v Piggman*, 496 F2d 270 (CA 6, 1974), provides an informative overview of *Morrissey* and associated United States Supreme Court decisions:

> Parole is no longer a state of administrative grace that may be summarily and arbitrarily ended at the whim of a parole board. *Gagnon v Scarpelli*, 411 US 778, 782 n 4; 93 S Ct 1756; 36 L Ed 2d 656 (1973)[, superseded by statute on unrelated grounds as stated in *Baldwin v Benson*, 584 F2d 953 (CA 10, 1978)]. Rather, a parolee has substantial liberty. Although such liberty is not the equivalent of that enjoyed by an ordinary citizen, it is greater than that enjoyed by one incarcerated for a crime. However this liberty may be restricted, it may not be terminated without the rudiments of procedural due process. *Morrissey*, 408 US 471. What is at stake is not simply technical legal notions of what steps must be followed in a revocation hearing. Instead, there is involved "a profound attitude of fairness between man and man, and more particularly between the individual and government . . . " *Joint Anti-Fascist Refugee Committee v McGrath*, 341 US 123, 162-163; 71 S Ct 624, 643; 95 L Ed 817 (1951) (FRANKFURTER, J., concurring). [*Piggman*, 496 F2d at 273 (citations altered).]

Relying in part on a Seventh Circuit Court opinion holding that "[b]reach of parole conditions is a necessary but not sufficient ground for parole revocation, for the board is required to determine whether the violator is still a good parole risk, and he may bring extenuating circumstances to the board's attention," *Caton v Smith*, 486 F2d 733, 735 (CA 7, 1973), the *Piggman* Court concluded that "due process requires that a parolee who has admitted violating a condition of his parole is still entitled to present evidence in mitigation. In consequence, the Board must consider and evaluate the mitigating circumstances before it decides whether revocation is appropriate," *Piggman*, 486 F2d at 274.

-14-

*Piggman* and *Caton*, while dated, are highly persuasive. They support the otherwise logical conclusion that if a parolee has a due process right to present mitigating evidence, the right necessarily includes the right to have the Board actually *consider* the mitigating evidence presented. This conclusion is also supported by the concept of fundamental fairness, which was clearly at the heart of the *Morrissey* Court's decision:

> The parolee is not the only one who has a stake in his conditional liberty. Society has a stake in whatever may be the chance of restoring him to normal and useful life within the law. Society thus has an interest in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of parole conditions. And society has a further interest in treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness. [*Morrissey*, 408 US at 484.]

A strictly imposed 60-month continuance in cases involving revocation for firearms possession would completely dispense with the Board's discretion in such cases. This limitation of discretion cannot be reconciled with the mandates of *Morrissey* and subsequent related decisions of the Supreme Court. Parolees have a due process right to have a Parole Board consider the evidence in mitigation. A complete prohibition on the Board's ability to hear and actually consider such evidence constitutes a violation of due process.

In its reply brief, the Board concedes the existence of a zero tolerance policy in cases of firearms-related parole violations, which mandates a five-year continuance regardless of the factual circumstances surrounding the violation. However, the Board insists that "based on information and belief, [the Board] hasn't imposed the strict, zero tolerance, near-automatic 60-month prison continuances for parolee firearms violations since Governor Granholm's administration," and the Board now has the discretion to consider anywhere from 24- to 60-month prison continuances. Although the Board contends that the former "automatic" five-year policy is no longer in effect, there has been no factual support for that contention presented to this Court. Nor was it raised in the lower court. Indeed, substantial evidence in the lower court record supports the inference that the Board continues to apply its unwritten "zero tolerance" policy in cases of firearms-related parole violations, and that they applied it in petitioner's case.

Perhaps most important is the lack of any reasoning in support of the 60-month continuance for petitioner's violation. Although the Board attached the ALE's parole revocation hearing summary to their notice of revocation, they provided no explanation to support their decision, save for a boilerplate statement that "[the Board] lacks reasonable assurance that the prisoner will not become a menace to society or to the public safety and revocation of parole is warranted[.]" Although not necessarily required to do so,[3] the Board failed to provide a specific explanation for the Board's significant departure from the 36-month continuance recommended by the ALE, despite the fact that the Board's continuance was within the permissible realm. The

---

[3] The Board is only required to provide a general "written statement of the findings of fact and the reasons for the [revocation] determination within 60 days after the paroled prisoner has been returned or is available for return to a state correctional facility." MCL 791.240a(6); *Jones*, 468 Mich at 660 n 2.

departure seems especially arbitrary, because the ALE informed the Board that she was recommending the continuance only because it was a firearms-related offense, and stated that, "The ALE does not object to the Board to [sic] exercising its discretion regarding the length of a continuance given [petitioner's] positive parole adjustment and the fact that he was forthcoming when questioned about the presence of weapons[.]" We find that the departure without explanation is evidence of a standard five-year continuance in cases involving firearms possession, and evidences the Board's failure to contemplate the mitigating circumstances presented here.

Further, while the Board now insists that the zero tolerance policy was eliminated after Governor Jennifer Granholm's tenure, the Board's counsel conceded the continued application of the policy at least twice at the circuit court hearing. Additionally, the MDOC refers to the zero tolerance policy in several of its own documents. Upon receiving notification of his charges, petitioner signed a notice of his rights which included the following language: "The Parole and Commutation Board will make a final determination on the violations which may range from re-parole to a 24 month continuance. However, the Parole Board may issue a 60 month continuance in the event the violation of parole involves firearm [sic]." In an MDOC document titled "Parole Violation Worksheet and Decision," both a parole agent and her supervisor recommended petitioner's return for a revocation hearing after the preliminary examination "due to zero tolerance policy," "because probable cause was found for weapons." "It is often the case that an agency's policies and practices will indicate the manner in which it is exercising its discretion." *Garner v Jones*, 529 US 244, 256-57; 120 S Ct 1362; 146 L Ed 2d 236 (2000). "Absent a demonstration to the contrary, we presume the Board follows its statutory commands and internal policies in fulfilling its obligations." *Id*.

Equally telling is the Board's unanimous refusal to reconsider the 60-month continuance after Administrator Daphne Johnson at the Office of Legal Affairs suggested that, based on the facts of petitioner's violation, "the Parole Board may want to reconsider [petitioner] for parole prior to expiration of the 60[-]month continuance provided his brother removes all weapons from his mother's residence and provided that [petitioner] receives adequate medical care in the community."

As the appellant, the Board "bore the burden of furnishing the reviewing court with a record to verify the factual basis for any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). An unsupported assertion in a reply brief is not enough to rebut the evidence in the lower court record or to prove that the circuit court was mistaken about the Board's imposition of an "automatic" five year penalty.

VII.

The Board also argues that the circuit court erred when it determined that the Board imposed an arbitrary penalty and abused its discretion when it ordered a 60-month continuance in petitioner's case, because there is no evidence to show that the Board failed to consider the mitigating circumstances presented to the ALE and attached to the Board's notice of decision.

"A ruling is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Wescott v Civil Serv Comm*,

298 Mich App 158, 162; 825 NW2d 674 (2012). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Kalaj v Kahn*, 295 Mich App 420, 425; 820 NW2d 223 (2012). "[F]ailure to exercise discretion when called on to do so constitutes an abdication and hence an abuse of discretion." *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012).

There is no evidence to support the inference that the Board considered the mitigating circumstances presented here. Petitioner is partially paralyzed, partially blind, and has undergone significant brain reconstruction to address a gunshot wound to the head. He takes medication for ongoing seizures, and his memory is so poor that his mother has to lay out the medication for him and remind him to eat. This was petitioner's first parole violation, and the ALE noted that his adjustment was "otherwise positive." He had attended mental health appointments, taken his medication as prescribed, complied with his curfew, and passed his drug tests. He was innocently forthcoming regarding the presence of firearms in his home. Neither firearm was accessible to petitioner, as one was in a locked case and the other rendered "inoperable" by a slide lock. As the ALE noted, there is "nothing in evidence which suggests that [petitioner] ever utilized the weapons for any purpose." Other than the agent's belief that the room where the weapons were found was petitioner's bedroom, there is no evidence at all of aggravating circumstances in this case. It is simply impossible, given the evidence in the record, to believe that the Board gave proper consideration to the factual circumstances presented. The circuit court correctly applied the law and found the Board's decision both arbitrary and an abuse of discretion.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause

-17-