*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRONSON HEALTH CARE GROUP, INC.,

        Plaintiff-Appellant,

v

ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Defendant-Appellee.

FOR PUBLICATION
September 28, 2023
9:05 a.m.

No. 363486
Kalamazoo Circuit Court
LC No. 2021-000278-NF

Before: SWARTZLE, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

This case concerns recent changes the Legislature made as part of a collection of no-fault reform measures. At issue is MCL 500.3107c (added by 2019 PA 21 and 2019 PA 22) and MCL 500.3107e (added by 2019 PA 21). Broadly speaking, these statutes allow insurers to sell—and applicants to buy—less-than-unlimited personal protection insurance (PIP) coverage for automobile insurance policies, provided certain statutory requirements are satisfied.

Brandi Russell was injured in a single-motor-vehicle accident in October 2020 and was treated by plaintiff. Shortly before the accident, defendant issued a policy to Russell with a $250,000 limit for PIP coverage. Plaintiff's treatment of Russell exceeded her policy's limit for PIP coverage. At issue in this appeal is whether Russell validly selected less-than-unlimited PIP coverage in accordance with the new statutory mandates in MCL 500.3107c and MCL 500.3107e.

To effectuate her $250,000 limit for PIP coverage, Russell had to mark her selection of coverage on a PIP selection form and sign the form. MCL 500.3107c(1). Defendant alleges that Russell electronically signed her PIP selection form, which is permitted by MLC 500.3107e(2)(c), so long as doing so complies with the uniform electronic transactions act (UETA), MCL 450.831 *et seq*. In support of its assertion that Russell electronically signed her PIP selection form, defendant submitted a PIP selection form with Russell's name typed at the bottom. We conclude that a document with a name typed on it does not, by itself, establish that a person electronically signed the document in accordance with the UETA. Accordingly, for the reasons explained in this opinion, we remand this issue for further discovery.

This does not resolve the issues on appeal, however. When Russell purchased her policy from defendant, she made a premium payment. Under MCL 500.3107c(3), defendant could establish a rebuttable presumption that Russell's policy had a $250,000 limit for PIP coverage if defendant established that the premium Russell paid corresponded to a $250,000 level of PIP coverage. To establish this rebuttable presumption, defendant provided an affidavit from one of its employees in which the employee averred that the premium Russell paid corresponded with a $250,000 limit for PIP coverage. Defendant, however, did not include this employee on its witness list, and did not submit the employee's affidavit until two days before the trial court was to consider the parties' competing motions for summary disposition. Given this, and because the employee's affidavit is the only evidence establishing that the premium Russell paid corresponded to a $250,000 limit for PIP coverage, we agree with plaintiff that plaintiff is entitled to conduct discovery on this issue. Accordingly, we remand for further discovery on this issue as well.

## I. BACKGROUND

Russell called defendant on October 22, 2020, to purchase an automobile insurance policy. Defendant's agent, Exodus Anderson, answered. During the course of their call, Russell agreed to purchase a policy with a $250,000 limit for PIP coverage. At the end of their call, Anderson emphasized that Russell needed to access her online account to confirm her coverage selections and sign certain documents for her policy to be effective. One of those documents was later identified as a PIP selection form.

On October 26, 2020—four days after purchasing her policy from defendant—Russell was seriously injured in a single-motor-vehicle crash. Following this accident, plaintiff provided Russell medical care and treatment totaling over $350,000. Defendant paid some of Russell's medical expenses, but, according to plaintiff, still owed plaintiff over $300,000 that it was refusing to pay. Accordingly, on July 6, 2021, plaintiff filed the complaint giving rise to this action.

Towards the close of discovery, defendant filed a motion for summary disposition under MCR 2.116(C)(10). The crux of defendant's argument in its motion was that Russell's policy had a $250,000 limit for PIP coverage, and that this policy limit had been exhausted as of the filing of defendant's motion. Defendant argued that Russell had confirmed her selection of a $250,000 limit for PIP coverage on a PIP selection form in accordance with MCL 500.3107c(1) and (2), and that she electronically signed that form in accordance with MCL 500.3107e(2)(c). Defendant concluded that (1) because Russell selected her less-than-unlimited PIP coverage in accordance with the statutory mandates, her selection of a $250,000 limit for PIP coverage was effective, and (2) because Russell had exhausted her policy's $250,000 limit for PIP coverage, plaintiff's claim for no-fault benefits from defendant based on Russell's policy must be dismissed.

In response, plaintiff argued that defendant failed to present any evidence that Russell actually electronically signed the PIP selection form that defendant relied upon in support of its claim; the form merely had Russell's name electronically printed under where a signature was required. Plaintiff explained that, if Russell signed the form electronically as defendant alleged, then defendant had to establish that she did so in accordance with the UETA, which defendant had failed to do.

In reply, defendant posited that plaintiff's argument was nothing more than a contention that Russell's signature should be denied enforceability because it was in electronic form, which was in contradiction of the UETA. Defendant alternatively argued that, even if Russell failed to select a $250,000 limit for PIP coverage in accordance with MCL 500.3107c(1), there was still a rebuttable presumption under MCL 500.3107c(3) that Russell's policy had a $250,000 limit for PIP coverage because she made a premium payment for that level of coverage.

Plaintiff also filed a competing motion for summary disposition. The crux of plaintiff's argument was that Russell did not select a limit of $250,000 for PIP coverage in accordance with MCL 500.3107c(1), and so Russell was entitled to unlimited PIP benefits. According to plaintiff, the requirements of MCL 500.3107c had to be fulfilled before a policy was issued, and it was undisputed that defendant did not comply with the statutory mandates before issuing Russell her policy. Plaintiff also reiterated its argument that defendant failed to produce evidence showing that Russell signed the PIP selection form required under MCL 500.3107c in one of the ways permitted under MCL 500.3107e. Plaintiff concluded that, because defendant failed to comply with the relevant provisions in MCL 500.3107c and MCL 500.3107e, defendant was required to provide Russell with unlimited medical coverage pursuant to MCL 500.3107c(4).

In response, defendant argued that there is no requirement in the statute that Russell sign the PIP selection form required by MCL 500.3107c before the policy is issued. Defendant then reiterated the arguments from its own motion for summary disposition; defendant argued that (1) Russell signed the PIP selection form required under MCL 500.3107c by electronically signing the form as permitted by MCL 500.3107e(2)(c), and (2) assuming Russell's selection of PIP coverage was ineffective, plaintiff had not overcome the rebuttable presumption under MCL 500.3107(3) that Russell's policy had a $250,000 limit for PIP coverage because she made a premium payment corresponding to that level of coverage.

In reply, plaintiff continued to argue that no evidence supported that Russell actually signed the PIP selection form electronically. As to defendant's alternative argument, plaintiff similarly argued that no evidence supported that Russell's premium payment corresponded to a policy with a $250,000 limit for PIP coverage.

The day after plaintiff's reply and two days before the trial court was to hear the parties' competing motions for summary disposition, defendant filed an affidavit of Stefanie Paradis—who specialized in the underwriting process for defendant—as a supplemental exhibit. In Paradis' affidavit, she averred that Russell's premium payment corresponded to the coverage she selected, which included coverage for PIP benefits up to $250,000.

On September 29, 2022, the trial court held a hearing on the parties competing motions. In line with its briefing, defendant argued that Russell validly selected a policy with a $250,000 limit for PIP coverage pursuant to MCL 500.3107c(1) and electronically signed the PIP selection form as permitted by MCL 500.3107e. Defendant also recapped its alternative argument that, even if Russell failed to make a valid selection under MCL 500.3107c(1), there was a presumption under MCL 500.3107c(3) that her policy with defendant had a $250,000 limit for PIP coverage because she made a premium payment that corresponded with that level of coverage. Plaintiff likewise largely argued in line with its briefing. Plaintiff argued that there was no evidence to support defendant's contention that Russell electronically signed the form required under MCL

500.3107c(1). Plaintiff also argued that there was no evidence that the form was presented to Russell "before coverage was bound," which plaintiff contended was required. With respect to defendant's argument related to MCL 500.3107c(3), plaintiff complained about the lateness of Paradis' affidavit and the fact that she was not included on defendant's witness list. Plaintiff also argued, for the first time, that the rebuttal presumption under MCL 500.3107c(3) only applies "where either the form is not return[ed] at renewal or the record is unclear about what the person selected," and neither applied here. After plaintiff finished arguing, defendant represented that it "did provide IT metadata showing IP addresses" to plaintiff, but admitted that it did not attach that document to its dispositive motion because the information in the document was "difficult for a layman to understand." Defendant said that, if the court was inclined to agree with plaintiff that there was a lack of evidence to support that Russell electronically signed the PIP selection form, then defendant would ask for leave to conduct additional discovery about the "IT metadata," including obtaining "an IT expert with regard to that issue."

After listening to the parties' arguments, the trial court issued a ruling from the bench. The trial court found that Russell's selection of a $250,000 limit for PIP coverage was effective because defendant presented evidence that Russell electronically signed the PIP selection form for that coverage amount. The trial court also rejected plaintiff's argument that defendant was required to sign the PIP selection form before binding coverage. The trial court alternatively reasoned that Russell paid the premium amount associated with a $250,000 coverage limit, so the presumption under MCL 500.3107c(3) applied and had not been rebutted. Accordingly, the trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10), and denied plaintiff's partial motion for summary disposition under the same subrule.

This appeal followed.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). Both parties moved for summary disposition under MCR 2.116(C)(10). Summary disposition under MCR 2.116(C)(10) is proper when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).

The initial burden in a motion under MCR 2.116(C)(10) rests with the moving party, who can satisfy its burden by either (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (quotation marks and citation omitted). In response to a properly supported motion under MCR 2.116(C)(10), the nonmoving party cannot "rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial." *Campbell v Kovich*, 273 Mich App 227, 229; 731 NW2d 112 (2006).

The central disputes in this appeal involve matters of statutory interpretation, which are reviewed de novo. *Putkamer v Transamerica Ins Corp of Am*, 454 Mich 626, 631; 563 NW2d 683 (1997). As this Court has explained:

> In reviewing questions of statutory interpretation, we must discern and give effect to the Legislature's intent. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. [*Farris v McKaig*, 324 Mich App 349, 353; 920 NW2d 377 (2018).]

## III. ANALYSIS

The dispute in this case centers around recent changes the Legislature made as part of a collection of no-fault reform measures. Previously, insurance companies in Michigan underwriting automobile insurance policies were required to provide "unlimited PIP coverage to policyholders." *Contl Cas Co v Michigan Catastrophic Claims Ass'n*, 874 F Supp 2d 678, 680 (ED Mich, 2012). See also *Johnson v USA Underwriters*, 328 Mich App 223; 936 NW2d 834, 848 (2019) (BECKERING, J., dissenting). In 2019, the Legislature amended these requirements so that insurers may now offer less-than unlimited PIP coverage, provided certain statutory requirements are satisfied. See 2019 PA 21 and 2019 PA 22. One such requirement is provided in MCL 500.3107c, which states in relevant part:

> (1) Except as provided in sections 3107d and 3109a, and subject to subsection (5), for an insurance policy that provides the security required under section 3101(1) and is issued or renewed after July 1, 2020, the applicant or named insured shall, in a way required under section 3107e and on a form approved by the director, select 1 of the following coverage levels for personal protection insurance benefits under section 3107(1)(a):

> (a) A limit of $50,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a). The selection of a limit under this subdivision is only available to an applicant or named insured if both of the following apply:

> (*i*) The applicant or named insured is enrolled in Medicaid, as that term is defined in section 3157.

> (*ii*) The applicant's or named insured's spouse and any relative of either who resides in the same household has qualified health coverage, as that term is defined in section 3107d, is enrolled in Medicaid, or has coverage for the payment of benefits under section 3107(1)(a) from an insurer that provides the security required by section 3101(1).

> (b) A limit of $250,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a).

(c) A limit of $500,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a).

(d) No limit for personal protection insurance benefits under section 3107(1)(a).

(2) The form required under subsection (1) must do all of the following:

(a) State, in a conspicuous manner, the benefits and risks associated with each coverage option.

(b) Provide a way for the applicant or named insured to mark the form to acknowledge that he or she has read the form and understands the options available.

(c) Allow the applicant or named insured to mark the form to make the selection of coverage level under subsection (1).

(d) Require the applicant or named insured to sign the form.

(3) If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective selection under subsection (1) but a premium or premium installment has been paid, there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1).

(4) If an insurance policy is issued or renewed as described in subsection (1), the applicant or named insured has not made an effective selection under subsection (1), and a presumption under subsection (3) does not apply, subsection (1)(d) applies to the policy.

This case raises two issues with respect to this statute. First, whether Russell made an effective selection of a $250,000 limit for PIP coverage under MCL 500.3107c(1) for her policy issued by defendant. Second, if Russell did not make an effective selection for PIP coverage, whether there is a rebuttal presumption that the premium payment she made accurately reflects a $250,000 level of coverage pursuant to MCL 500.3107c(3). If both questions are answered in the negative, then Russell's policy had unlimited PIP coverage under MCL 500.3107c(4).

A. MCL 500.3107C(1)

To address the first issue, we must determine whether Russell made an effective selection under MCL 500.3107c(1). Again, that subsection provides that an "insured shall, in a way required under section 3107e *and* on a form approved by the director," select a level of PIP coverage. MCL 500.3107c(1) (emphasis added). Plaintiff does not contest that the PIP selection form allegedly signed by Russell was "approved by the director" within the meaning of MCL 500.3107c(1).

-6-

Instead, plaintiff initially argues that defendant failed to comply with MCL 500.3107c(1) because it "failed to provide Ms. Russell with the PIP selection form before she purchased the policy." In support of its argument, plaintiff directs this Court's attention to an FAQ issued by the Department of Insurance and Financial Services (DIFS), in which DIFS states that carriers are required to provide the PIP selection form "at the time of new business." Yet plaintiff does not even intimate that such a requirement appears in the statute. Rather, plaintiff simply argues that this Court should accept DIFS' interpretation of the statute because "[t]his Court generally defers to the interpretation of a statute provided by the administrative agency responsible for administering it, unless that interpretation is clearly wrong." *Bureau of Worker's & Unemployment Comp v Detroit Med Ctr*, 267 Mich App 500, 507; 705 NW2d 524 (2005). And, according to plaintiff, DIFS' interpretation is not "clearly wrong" because it is consistent with "the whole point" of MCL 500.3107c.

Even if plaintiff is correct that DIFS' interpretation is consistent with the underlying purpose of MCL 500.3107c, courts cannot rely "on the perceived purpose of the statute" to ignore basic principles of statutory interpretation. *Perkovic v Zurich Am Ins Co*, 500 Mich 44, 53; 893 NW2d 322 (2017). It is an elementary rule of statutory interpretation that courts "cannot and should not add requirements to the statute that are not found there." *Scugoza v Metro Direct Prop & Cas Ins Co*, 316 Mich App 218, 228; 891 NW2d 274 (2016) (quotation marks and citation omitted). There is nothing in the plain language of MCL 500.3107c(1) to suggest that it requires the PIP selection form be provided to the insured before the policy is issued. Given this, DIFS' interpretation is "clearly wrong" because it adds a requirement to the statute that is not discernible from the statute's text. Accordingly, we need not defer to DIFS' interpretation, and we reject plaintiff's argument that the statute requires insureds to complete the PIP selection form before coverage is issued.

Plaintiff's more persuasive argument is that defendant failed to provide sufficient evidence proving that Russell actually signed the PIP selection form. MCL 500.3107c(1) states in relevant part that an insured "shall" select a coverage option "in a way required under" MCL 500.3107e. That section in turn provides in relevant part:

(2) A person must make a selection under section 3009 or 3107c, or an election under section 3107d in 1 of the following ways:

(a) Marking and signing a paper form.

(b) Giving verbal instructions, in person or telephonically, that the form be marked and signed on behalf of the person. To be an effective selection or election, the verbal instructions must be recorded and the recording maintained by the person to whom the instructions were given. If there is a dispute over the effectiveness of a selection or election under this subdivision, there is a presumption that the selection or election was not effective and the insurer has the burden of rebutting the presumption with the recording.

(c) Electronically marking the form and providing an electronic signature as provided in the uniform electronic transactions act, 2000 PA 305, MCL 450.831 to 450.849.[1]

MCL 450.832(h) of the UETA provides, " 'Electronic signature' means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." And MCL 450.839 provides:

(1) An electronic record or electronic signature is attributable to a person if it is the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

(2) The effect of an electronic record or electronic signature attributed to a person under subsection (1) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including any agreements of the parties, and otherwise as provided by law.

The UETA defines "security procedure" as "a procedure employed for the purpose of verifying that an electronic signature, record, or performance is that of a specific person or for detecting changes or errors in the information in an electronic record." MCL 450.832(n).

In support of its assertion that Russell electronically signed the PIP selection form, defendant provided a copy of the form, at the bottom of which appeared the following:

| APPLICANT/NAMED INSURED SIGNATURE | DATE |
|---|---|
| BRANDI RUSSELL | 10/22/2020 |

Defendant then represented that this was Russell's signature without any evidence supporting the same. We conclude that this was insufficient to establish that Russell electronically signed the PIP selection form in accordance with the UETA.

MCL 450.832(h) defines "electronic signature" in relevant part as a symbol executed or adopted by a person with intent to sign the record, and MCL 450.839(1) provides that an electronic signature is attributable to a person if it was "the act of the person." MCL 450.839(1) and (2) then explain how a party can show that a signature was "the act of the person." Here, defendant merely offered a document with an electronically printed name and date. Nothing about Russell's name on the document in and of itself suggests that it was executed or adopted by Russell. Stated differently, the fact that Russell's name appears on the document does not by itself establish that the electronic signature was "the act of" Russell. Defendant merely represents that the name printed on the form is Russell's signature, but it is well-established that counsel's argument is not

---

[1] While MCL 500.3107e(2)(c) allows an applicant or insured to electronically mark *and* sign the form, plaintiff only disputes whether Russell electronically *signed* the form.

evidence. See, e.g. *People v Johnson*, 382 Mich 632, 649; 172 NW2d 369 (1969) (explaining that "arguments of counsel are not evidence nor are they the law").

Plaintiff argues that defendant's failure to provide proof that the signature was in fact Russell's entitles plaintiff to summary disposition on this issue. While this argument is not meritless, see *Quinto*, 451 Mich at 362, we choose instead to remand for further discovery. The record reflects that, in the trial court, defendant provided plaintiff with "IT metadata showing IP addresses," and represented that this "metadata" established that Russell electronically signed the PIP selection form.[2] Unfortunately, neither party hired an expert to make sense of this "IT metadata showing IP addresses," so it is unclear what the evidence establishes, if anything. It is possible, however, that the "IT metadata" could show that Russell signed the PIP selection form electronically or otherwise accepted her name as it appeared on the form in a way that satisfies MCL 450.832(h) and MCL 450.839. Accordingly, we vacate the trial court's order granting defendant's motion for summary disposition and remand for further discovery on this issue. We conclude that this resolution is prudent because, for the reasons that will be explained, we likewise conclude that plaintiff is entitled to further discovery as to whether defendant established a rebuttable presumption under MCL 500.3107c(3) that Russell's policy had a $250,000 limit for PIP coverage.

B. MCL 500.3107C(3)

Next, the parties dispute whether MCL 500.3107c(3) is applicable to this case. That subsection provides:

> If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective selection under subsection (1) but a premium or premium installment has been paid, there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1).

Reading the language of the statute as written, it provides that if (1) a policy is issued as described in MCL 500.3107c(1), and (2) the insured did not make an effective selection for PIP coverage under that subsection, but (3) the insured still made a premium payment, then there is a rebuttable presumption that the level of coverage corresponds to the premium payment made. For example, if an insurer issues a policy under MCL 500.3107c(1) and the insured fails to make an effective selection of PIP coverage under that subsection, but the insured made a premium payment for a policy with a $500,000 limit for PIP coverage, then there is a rebuttal presumption that the policy had a $500,000 limit for PIP coverage.

---

[2] Plaintiff claims in its reply brief on appeal that this metadata "was never submitted to the trial court" and is therefore not a part of the lower court record. Plaintiff's assertion is factually incorrect; plaintiff itself submitted this information to the trial court, and it is indeed part of the lower court record.

Plaintiff disagrees with this interpretation, and contends that the presumption in MCL 500.3107c(3) only applies where "[t]he only thing that is unclear is which of the possible coverage levels the insured intended to choose." Plaintiff explains that this can be "where, for example, the insured signs the DIFS-approved form but checks the boxes for multiple levels of coverage, or where the insured's checking of the boxes is illegible." Plaintiff bases this argument on the statute's use of the language "the level of coverage applicable to the policy under subsection (1)," contending that this language necessarily presupposes that "there is *some* level of coverage that is 'applicable to the policy under subsection (1),' " which in turn must mean that "the insurer properly used the DIFS-approved form and the insured actually signed it."

We conclude that plaintiff's interpretation has no basis in the language of the statute. Again, the statute plainly has three preconditions that must be met for it to apply—(1) a policy is issued as described in MCL 500.3107c(1), (2) the insured did not make an effective selection of PIP coverage under the same subsection, and (3) the insured made a premium payment. MCL 500.3107c(3). If all three preconditions are met, then "there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1)." MCL 500.3107c(3). Plaintiff's interpretation, however, changes the second precondition to only situations in which "it is unclear from the insured's markings on the form which level of coverage the insured actually chose." However, if the Legislature intended to limit MCL 500.3107c(3) to situations in which the insured's selection of coverage was unclear, it could have used language reflecting that intent. That the Legislature in MCL 500.3107c(3) did not limit that subsection's application to the single situation identified by plaintiff seems to run against plaintiff's argument. That is, it suggests that the Legislature intended for MCL 500.3107c(3) to apply to any situation in which MCL 500.3107c(1) was not followed to the letter (and consequently the insured did not make "an effective selection under [MCL 500.3107c(1)]"), but the parties to the policy nevertheless had an apparent understanding about the level of coverage purchased as demonstrated by the payment of a premium that corresponds to that level of coverage.

We acknowledge, however, that the thrust of plaintiff's argument has nothing to do with the statute, but instead is an argument that the interpretation of MCL 500.3107c(3) adopted in this opinion is bad policy. Plaintiff begins its argument by asserting:

> [Defendant's] interpretation of the statute [which is the same as that adopted in this opinion] is deeply flawed. [Defendant] argues that it does not actually matter whether an insurance applicant knows anything about the insurance product she is purchasing or about any alternative options, as long as the insurance company collects the premium that it quoted to the applicant. If [defendant's] interpretation of subsection (3) prevails, then subsection (3) allows [defendant] to entirely ignore subsection (1), ignore the DIFS- mandated PIP selection form, fail to advise an applicant that she has the option to purchase unlimited no-fault coverage, and fail even to obtain the applicant's signature—and still cap the policy, as long as it has collected a premium payment.

> If [defendant's] view of the statutory language is correct, then MCL 500.3107c(1) and (2) were a waste of the Legislature's time. After all, an insurance company will virtually never bind coverage without receiving at least an initial installment payment. And if [defendant] is correctly interpreting subsection (3), an

-10-

insurer could rely on the premium payment (along with evidence that the premium payment is tied to a specific level of coverage) to establish the applicable coverage level, even when the applicant had no knowledge of "the benefits and risks associated with each coverage option" and never signed anything "to acknowledge that he or she has read the form and understands the options available." MCL 500.3107c(2).

While plaintiff raises serious concerns, they are policy concerns which "belong[] to the Legislature." *United States Fid & Guar Co v Michigan Catastrophic Claims Ass'n*, 484 Mich 1, 23; 795 NW2d 101 (2009). There is no reason for this Court to contort the plain language of MCL 500.3107c(3) to comport with a policy that the Legislature (apparently) did not see fit to consider when drafting that subsection as reflected by the plain language of the statute. More importantly, plaintiff's concerns "appear highly speculative and, indeed, unfounded." *Id*. Plaintiff has not pointed to any evidence that insurers will simply ignore MCL 500.3107c(1) and (2) if this Court disagrees with plaintiff's interpretation of the statute. And there is ample reason to be skeptical of plaintiff's suggestion to that effect. Insurance is a highly regulated industry. As such, it seems that an insurer who openly flouts this state's statutory mandates (as plaintiff suggests) will not be selling insurance in Michigan for long. The far more likely result of this opinion's interpretation of MCL 500.3107c(3) is that insurers will continue attempting to comply with MCL 500.3107c(1) and (2)—just like defendant did in this case. If an insurer fails to fully comply with those subsections, and consequently the insured "has not made an effective selection under" MCL 500.3107c(1), then the insurer may be able to turn to MCL 500.3107c(3) to create a rebuttable presumption about the level of coverage it is obligated to provide.

It also bears noting:

> It is now quite generally held by the courts that a rebuttable or prima facie presumption has no weight as evidence. It serves to establish a prima facie case; but, if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and it then becomes a question of weighing the actual evidence introduced, without giving any evidential force to the presumption itself. [*In re Estate of Kanera*, 334 Mich 461, 473; 54 NW2d 718 (1952) (quotation marks and citation omitted).]

That is, a rebuttable presumption like the one in MCL 500.3107c(3) can, as its name suggests, be rebutted. And once the presumption in MCL 500.3107c(3) has been rebutted, the insurer must introduce evidence to show that the insured actually selected the level of coverage argued by the insurer, and the presumption itself no longer acts as evidence of the level of coverage. See *In re Estate of Kanera*, 334 Mich at 473. It follows that, when MCL 500.3107c(3) is interpreted as plainly written, it reflects a policy choice by the Legislature in which the Legislature chose how to balance the interests of insureds with the interests of insurers. Plaintiff's policy-based argument boils down to an assertion that this legislatively-chosen balance reflects bad policy. But "[i]t is not the role of the judiciary to second-guess the wisdom of a legislative policy choice; our constitutional obligation is to interpret—not to rewrite—the law." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 149; 644 NW2d 715 (2002).

-11-

Accordingly, we conclude that MCL 500.3107c(3) may apply to this case. We further conclude that MCL 500.3107c(3) does, in fact, apply, because its three preconditions are satisfied—(1) defendant issued Russell a policy, (2) for purposes of this analysis, it can be assumed that Russell did not make an effective selection of PIP coverage, and (3) Russell made a premium payment to defendant. Thus, "there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1)." MCL 500.3107c(3). We further conclude, however, that this rebuttable presumption is not self-executing in the sense that, for it to apply, the defendant must establish that the amount of the premium paid accurately reflects the level of coverage. For example, here, defendant needs to establish that the premium Russell paid "accurately reflects" a $250,000 limit for PIP coverage.

As to the adequacy of defendant's evidence on this point, plaintiff persuasively argues that it should be allowed to conduct further discovery about whether the premium Russell paid accurately reflected a $250,000 level of PIP coverage. In support of its assertion that the premium payment made by Russell corresponded to a $250,000 limit on PIP coverage, defendant relied solely upon Paradis' affidavit. Yet defendant did not provide that affidavit until two days before the hearing on the parties' competing motions for summary disposition, and a day after plaintiff correctly argued that defendant had not provided any evidence that the premium Russell paid actually corresponded to a $250,000 policy limit. Moreover, and importantly, Paradis was never listed on defendant's witness list. As explained by this Court:

> Witness lists are an element of discovery. The ultimate objective of pretrial discovery is to make available to all parties, in advance of trial, all relevant facts which might be admitted into evidence at trial. The purpose of witness lists is to avoid "trial by surprise." [*Grubor Enterprises, Inc v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993) (quotation marks and citation omitted).]

Given (1) defendant's untimely introduction of Paradis as a witness and (2) the fact that Paradis' affidavit is the only evidence explicitly stating that the premium paid by Russell corresponded to a $250,000 limit for PIP coverage, we conclude that plaintiff is entitled to conduct further discovery on the issue. Defendant effectively withheld Paradis as a witness and then, after all motions, answers, and replies were filed, submitted a supplemental exhibit in which defendant, for the first time, disclosed Paradis as a witness.[3] This untimely identification of Paradis clearly prejudiced plaintiff because Paradis' affidavit is the only evidence explicitly establishing that the premium Russell paid corresponded to a $250,000 limit for PIP coverage. Accordingly, we vacate this alternative holding by the trial court and remand for further discovery on this issue as well.

---

[3] Counsel for defendant affirmed that defendant typically redacts premium amounts from its discovery responses and defendant redacted the premium amount in this case. For defendant to do this and then, at the eleventh hour, reveal a premium amount that it claims established a rebuttable presumption under MCL 500.3107c(3) regarding the level of coverage applicable to the policy under subsection (1) defies common sense and ignores the initial disclosure requirements of MCR 2.302(A)(1).

Vacated and remanded for further proceedings.  We do not retain jurisdiction.


/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney